PREGERSON, Circuit Judge:
 

 Appellant Placer Savings and Loan Association appeals from a grant of summary judgment in favor of appellee Edward Walsh, Bankruptcy trustee for the debtor John Gilbert Marino. The district court granted Walsh’s motion for summary judgment, holding that Walsh could assert 11 U.S.C. § 544(a)(3) to avoid obligations arising out of the Waters’ Edge Apartments of which Marino had been co-owner.
 

 Placer now asserts: (1) that a partnership existed between the co-owners of the Waters’ Edge Apartments and that Walsh cannot avoid those partnership liabilities by asserting section 544(a)(3); and (2) that Placer has an equitable lien against Mari-no’s interest and that the lien is unavoidable under section 544(a)(3) because the leasehold upon which the Waters’ Edge Apartments are built is personal property.
 

 Placer’s assertion that the leasehold portion of the apartment property 'is personal property and, therefore, not subject to section 544(a)(3), is correct. We hold that whatever part of Marino’s interest is attributable to the leasehold cannot be protected under section 544(a)(3), and, therefore, may be subject to whatever liabilities Placer may legitimately assert against it. We also hold, as a matter of. law, that Placer does not possess an equitable lien against that interest. We therefore remand to the
 
 *1564
 
 district court to determine what part of Marino’s interest in the apartments was attributable to the leasehold and whether Placer has a legitimate partnership claim against it.
 

 BACKGROUND
 

 On January 15, 1979, John Gilbert Mari-no (debtor) and Anthony and Jeanette Xuereb purchased the Waters’ Edge Apartments (apartments) in Foster City, California. The property consisted of a fifty-year ground lease and the buildings on it. On October 24, 1979, Marino transferred one-half of his interest to Leo Lugliani. Mari-no, Lugliani, and the Xuerebs held record title to the apartments as tenants-in-common. They testified, however, that they operated the apartments as a partnership and filed partnership tax returns. On June 20, 1980, the co-owners entered into “an option and joint venture agreement” with Devcon of California, Inc. to convert the apartments to condominiums. Devcon was to obtain permits and the required approval for the conversion. The costs the co-owners agreed to pay Devcon included legal fees, costs of permits, and architectural and engineering fees.
 

 On February 26, 1982, Marino filed a voluntary petition for Chapter 11 bankruptcy. At the time bankruptcy was filed, Mar-ino owned 18.35% of the apartments, Lu-gliani owned 18.35%, and the Xuerebs owned 63.3%.
 
 Placer Savings & Loan Assoc. v. Walsh (In re Marino),
 
 49 B.R. 600, 601 (N.D.Cal.1985) (Marino). On June 30, 1982, the co-owners executed a “termination and contingency fee agreement” with Devcon and its other creditors under the 1980 agreement (Devcon, et al.) (1) terminating the 1980 agreement, (2) providing that Devcon, et al. would continue to work on the conversion, and (3) providing that Devcon, et al. would receive $200,000 plus legal fees and costs upon sale of the property if the conversion approval was obtained. Ultimately, Devcon was successful in obtaining approval for the conversion.
 

 On October 7, 1983, Marino commenced an action,
 
 Marino v. Xuereb,
 
 under 11 U.S.C. § 363(h) as part of the ongoing bankruptcy, in order to sell 100% of the apartments. Appellant Placer Savings & Loan (Placer) purchased the Xuereb’s share of the apartments, 63.3%. Placer also agreed to shoulder the Xuereb’s liability to Devcon, et al. On December 21, 1983, Placer filed this action seeking (1) to determine the validity of Devcon’s claims, and (2) a declaratory judgment that those claims be paid directly out of the proceeds of any sale of the property.
 

 On January 10, 1984, Marino’s bankruptcy was converted into a Chapter 7 liquidation proceeding. Appellee Edward Walsh was appointed bankruptcy trustee. On May 14, 1984, Placer exercised its right of first refusal under section 363(i) and purchased 100% of the apartments. In October 1984, Placer determined that the claims of Devcon, et al. were valid and agreed to pay them in full, reserving the right to seek contribution against Walsh and Lugliani.
 

 The bankruptcy estate received 18.35% of the proceeds of the sale of the apartments to Placer to compensate the estate for the debtor’s 18.35% ownership interest. Placer argued that, because the bankruptcy estate received 18.35% of the proceeds from the sale of the apartments, the bankruptcy estate was liable for a pro-rata 18.35% share of the debts owed to Devcon, et al. As bankruptcy trustee, Walsh invoked 11 U;S.C. § 544(a)(3) to avoid Placer’s claim. On March 27, 1985, the United States District Court granted Walsh’s motion for summary judgment, holding that, as a matter of law, Walsh could use section 544(a)(3) to avoid Placer’s claim that the bankruptcy estate pay 18.35% of the debt owed to Devcon, et al.
 
 Marino,
 
 49 B.R. at 604.
 

 STANDARD OF REVIEW
 

 The district court granted Walsh’s motion for summary judgment. A grant of a motion for summary judgment is reviewed de novo.
 
 Ashton v. Cory,
 
 780 F.2d 816, 818 (9th Cir.1986). The appellate court must determine, viewing the evidence in the light most favorable to the non-moving party, whether there are any genuine is
 
 *1565
 
 sues of material fact and whether the district court correctly applied the relevant substantive law.
 
 Lew v. Kona Hospital,
 
 754 F.2d 1420, 1423 (9th Cir.1985).
 

 ANALYSIS
 

 Title 11 U.S.C. § 544(a), “the strong arm clause,” gives a bankruptcy trustee special powers to set aside transfers or liens against property in the bankruptcy estate. Section 544(a)(3) allows the trustee to avoid all obligations and transfers that would be avoidable by “a bona fide purchaser of real property ... that obtains the status of a bona fide purchaser ... at the time of the commencement of the [bankruptcy] case, whether or not such a purchaser exists.” Section 544(a) grants the bankruptcy trustee this power “without regard to any knowledge of the trustee or of any creditor.” The powers of a bona fide purchaser for purposes of section 544(a) are defined by state law.
 
 Maine Nat’l Bank v. Morse (In re Morse),
 
 30 B.R. 52, 54 (Bankr. 1st Cir.1983);
 
 Saghi v. Walsh (In re Gurs),
 
 27 B.R. 163, 164 (Bankr. 9th Cir.1983);
 
 C.R. Loup v. Great Plains W. Ranch Co. (In re Great Plains W. Ranch Co.,
 
 38 B.R. 899, 905 (Bankr.C.D.Cal.1984);
 
 see
 
 4
 
 Collier on Bankruptcy
 
 ¶ 544.02 (L. King 15th ed. 1986).
 

 I. Debtor’s Partnership Liability
 

 Placer asserts that the original business venture between Marino, Lugliani, and the Xuerebs was a partnership because it was an association of two or more persons to carry on as co-owners of a business for profit. Cal.Corp.Code § 15006(1);
 
 Kaufman-Brown Potato Co. v. Long,
 
 182 F.2d 594, 599 (9th Cir.1950), and because the co-owners filed partnership tax returns. The district court expressly did not determine whether a partnership existed.
 
 Marino,
 
 49 B.R. 600, 603 n. 3. Because the question whether a partnership existed under California law is a question of intent,
 
 Kaufman-Brown Potato Co.,
 
 182 F.2d at 599, it is “essentially factual,” and best resolved by the fact-finding tribunal.
 
 Pullman-Standard v. Swint,
 
 456 U.S. 273, 288, 102 S.Ct. 1781, 1790, 72 L.Ed.2d 66 (1982);
 
 Commissioner v. Duberstein,
 
 363 U.S. 278, 289, 80 S.Ct. 1190, 1198, 4 L.Ed.2d 1218 (1960);
 
 United States v. McConney,
 
 728 F.2d 1195, 1203-04 (9th Cir.),
 
 cert. denied,
 
 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).
 

 A. Debtor’s Real Property Interest
 

 Section 544(a)(3) gives Walsh, as bankruptcy trustee, the power to avoid liabilities that could be avoided by a hypothetical bona fide purchaser of real property. Nevertheless, Placer maintains that section 544(a)(3) will not protect the proceeds of the sale of the debtor’s real property interest in the Waters’ Edge Apartments because a bona fide purchaser under California law (1) cannot be assigned a partnership interest, and (2) cannot take a partnership interest free of partnership liabilities. However, Cal.Corp.Code section 15010(3) states:
 

 Where title to real property is in the name of one or more of the partners, whether or not the record discloses the right of the partnership, the partners in whose name the title stands may convey title to such property, but the partnership may recover such property ... unless the property has been conveyed to a bona fide purchaser for value without knowledge that the partner in executing the conveyance has exceeded his authority-
 

 Section 15010(3) provides for the situation at issue here. Walsh, by virtue of section 544(a)(3), has the rights of a hypothetical bona fide purchaser without notice. The language of the section renders the trustee’s actual knowledge irrelevant. The Third Circuit, in
 
 McCannon v. Marston,
 
 679 F.2d 13, 16-17 (3d Cir.1982), held that constructive notice or inquiry notice may limit the trustee’s section 544(a)(3) avoidance power, but neither constructive notice nor inquiry notice are present in this case.
 

 Moreover, in
 
 Barton v. Ludy,
 
 11 Cal.2d 1, 76 P.2d 654 (1938), the California Supreme Court allowed an assignment of partnership real property when the assign-ee had no notice of the partnership. Although
 
 Barton
 
 was decided under a prede
 
 *1566
 
 cessor to the present California partnership act, the result is consistent was the language of section 15010(3). Section 544(a)(3) will protect the debtor’s real estate interest from the partnership claims asserted by Placer.
 

 B. The Debtor’s Leasehold Interest
 

 Section 544(3)(a), however, does not protect the debtor’s interest in the fifty-year lease to the land on which the Waters’ Edge Apartments were built. The leasehold interest is personal property under California law.
 
 Dabney v. Edwards,
 
 5 Cal.2d 1, 10-11, 53 P.2d 962, 964 (1935) (per curiam);
 
 Callahan v. Martin,
 
 3 Cal.2d 110, 118-20, 43 P.2d 788, 792-93 (1935).
 
 See also Soper v. Crystal Palace Gambling Hall, Inc., (In re Crystal Palace Gambling Hall, Inc.),
 
 36 B.R. 947, 951 (Bankr. 9th Cir.1984)
 
 appeal dismissed,
 
 785 F.2d 315 (9th Cir.1986). The leasehold, therefore, is not subject to section 544(a)(3). Because section 544(a)(3) cannot be applied, Walsh does not possess the rights of a hypothetical bona fide purchaser of the leasehold estate. If a partnership exists, then that part of the debtor’s estate attributable to the leasehold may be subject to Placer’s claim arising out of its payments to Devcon, et al.
 
 See
 
 Cal.Corp.Code § 15025(2)(c). Nothing in the record establishes what part, if any, of the value of the debtor’s 18.35% ownership interest arises from the leasehold.
 

 C. Estoppel of Partnership
 

 Walsh argues that, as a matter of law, Placer is estopped from asserting that a partnership existed. We disagree.
 

 Walsh alleges that (1) in Placer’s memorandum of points and authorities in support of its motion to intervene as a defendant in the bankruptcy action, Placer referred to itself as “fee-owner” of the Waters’ Edge Apartments; and (2) Placer affirmatively prayed for an order to sell the apartments under 11 U.S.C. § 363(h), which only applies to property held in tenancy in common, joint tenancy, or tenancy by the entirety.
 

 While Placer may not have been consistent in its characterization of the apartments property, its admissions of cotenan-cy do not amount to grounds for equitable estoppel. Detrimental reliance is a prerequisite for equitable estoppel.
 
 Kinzli v. City of Santa Cruz,
 
 539 F.Supp. 887, 902 (N.D.Cal.1982);
 
 See Shamrock Development Co. v. City of Concord,
 
 656 F.2d 1380, 1386 (9th Cir.1981). Walsh has not shown how they might have relied on Placer’s characterization of their ownership relationship.
 

 Walsh argues that the court should impose “judicial estoppel” to prevent Placer from asserting that a partnership existed. He grounds his argument for judicial estoppel on two cases,
 
 Glick v. White Motor Co.,
 
 458 F.2d 1287, 1291 (3d Cir.1972), and
 
 Scarano v. Central R.R. Co. of New Jersey,
 
 203 F.2d 510, 513 (3d Cir.1953). The “preclusion rule” set forth in these cases is inapplicable here. That rule bars a plaintiff “who has obtained relief from an adversary by asserting and offering proof to support one position” from making a second inconsistent claim.
 
 Scarano,
 
 203 F.2d at 513. Although Placer arguably gained an opportunity to purchase the apartments from Walsh by asserting section 363(h), inconsistent with its present claim that the apartments were held as a partnership, that opportunity cannot be construed as “relief obtained from an adversary.”
 

 II. Equitable Lien
 

 Placer claims an equitable lien against the debtor’s share of the proceeds from the sale of the Waters’ Edge Apartments. Placer argues that this lien arises out of its payment of the obligations to Devcon, et al. We hold, as a matter of law, that no equitable lien exists.
 

 To assert that its alleged equitable lien is not avoidable under section 544(a)(3), Placer depends on the fact that under California law the leasehold on which the Waters’ Edge Apartments are built is personal property,
 
 Dabney v. Edwards,
 
 5 Cal.2d 1, 53 P.2d 962, and therefore not subject to section 544(a)(3).
 

 
 *1567
 
 However, at the time Placer paid the debts to Devcon, et al., in October 1984, Placer was 100% owner of the apartments. Therefore, its payment did not benefit Walsh or the debtor’s estate. An equitable lien is a remedy for unjust enrichment.
 
 United States v. Adamant Co.,
 
 197 F.2d 1, 10 (9th Cir.),
 
 cert. denied,
 
 344 U.S. 903, 73 S.Ct. 283, 97 L.Ed. 698 (1952). There is no evidence of unjust enrichment here.
 

 In support of its claim to an equitable lien, Placer offers
 
 Restatement of Restitution
 
 § 105(1) (1937), which allows a lien when one co-tenant “has taken reasonably necessary action for the preservation of the subject matter or of [the co-tenants’] common interests.” This section is not persuasive because the payment of the debts was not reasonably necessary for preservation and because Walsh and Placer were not co-tenants at the time the action was taken.
 

 CONCLUSION
 

 We do not know what part of the proceeds from the sale of debtor’s 18.35% of the Waters’ Edge Apartments is attributable to the sale of debtor’s interest in the fifty-year leasehold on which the apartments were built. That part of the proceeds that is attributable to the ground lease is attributable to personal property and, therefore, cannot be protected under section 544(a)(3). These proceeds may be subject to legitimate partnership debts arising out of the relationship between the co-owners of the apartments and Placer’s payment of the debts to Devcon, et al. Because the question whether a partnership existed under California law is “essentially factual,”
 
 see United States v. McConney,
 
 728 F.2d at 1203-04, the “concerns of judicial administration” favor a determination by the district court. We, therefore, remand to the district court for a determination of two issues, the value of the leasehold and the existence of a partnership.
 

 REVERSED and REMANDED