In re PROFESSIONAL INVESTMENT PROPERTIES OF AMERICA, Debtor.

**Robert BRIGGS and Grace Briggs, Plaintiffs–Appellees,**

v.

**Roy W. KENT, Trustee, Estate of Professional Investment Properties of America, Inc., Defendant–Appellant.**

**No. 90–35175.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 3, 1991.

Decided Jan. 30, 1992.

Charles K. Wiggins, Edwards, Wiggins & Hathaway, Seattle, Wash., for defendant-appellant.

Shawn B. Briggs, Briggs & Briggs, Tacoma, Wash., for plaintiffs-appellees.

Before WRIGHT, THOMPSON and T.G. NELSON, Circuit Judges.

T.G. NELSON, Circuit Judge:

In this bankruptcy case, we are asked to decide under Washington law whether the contents of the Briggs' involuntary petition which forced the debtor into bankruptcy put the trustee on sufficient inquiry notice of the Briggs' interest under unrecorded instruments. If so, he may not invoke the avoidance powers provided by 11 U.S.C. § 544. We affirm the district court and hold that the trustee had sufficient notice which precludes the avoidance powers.

## FACTS AND PROCEEDINGS BELOW

In October, 1985, the Briggs lent $50,000 to the debtor, Professional Investment Properties. They received a promissory note and a deed of trust on the debtor's real property as security for the loan. The deed of trust was not recorded.

When the Briggs learned of the debtor's financial difficulties, they filed a petition to force the debtor into involuntary bankruptcy on May 28, 1986. Simultaneously, they filed a Motion for Appointment of Trustee, and the real property became an asset of the bankruptcy estate pursuant to 11 U.S.C. § 541. In anticipation of a sale of the real property by the trustee, the Briggs attempted to impose an equitable lien on the proceeds. The bankruptcy court denied their motion for summary judgment and held that the Briggs were unsecured creditors of the estate.

The Briggs appealed to the district court which remanded for further findings of fact. Specifically, the district court questioned whether the trustee had constructive notice of the Briggs' interest in the real property. On remand, the Briggs presented expert testimony "that the contents of the petition constituted constructive notice of the Briggs' interest in the real property." Nevertheless, the bankruptcy court granted summary judgment in favor of the trustee concluding that "any constructive notice of plaintiffs' interest achieved by filing the original bankruptcy pleadings comes too late to secure their interest in a position prior to that acquired by the trustee."

The district court reversed, reaching the opposite conclusion: "It is the judgment of the court that the quoted language constituted constructive notice of a prior claim by the Briggs."

On March 3, 1990, the trustee appealed the decision of the district court. On August 3, 1990, however, the bankruptcy court approved the trustee's sale of the estate's claim to the proceeds from the sale of the property to Maynard B. Miller.

### I. *Transferability of the trustee's "strong arm powers."*

■ Initially, we must decide whether the trustee's strong arm powers are transferable to Miller. The Briggs claim that only the trustee may invoke § 544, discussed hereafter.

■ First, Miller argues that this court should not discuss the issue because it was not first raised in the district court. Generally, an appellate court will not consider arguments not first raised before the district court unless there were exceptional circumstances. *Villar v. Crowley Maritime Corp.*, 782 F.2d 1478, 1483 (9th Cir. 1986). The specific "exceptional circumstances" that this circuit has identified are as follows: (1) review is necessary to prevent a miscarriage of justice; (2) a new issue arises while an appeal is pending because of a change in the law and (3) the "issue presented is purely one of law and either does not depend on the factual record developed below, or the pertinent record has been fully developed." *Bolker v. C.I.R.*, 760 F.2d 1039, 1042 (9th Cir.1985).

The third exception applies here. The record has been fully developed and the parties do not dispute that the transfer took place, only the attendant legal ramifications. It would serve no purpose to remand this case back to the district court to hear an issue that can be addressed equally as well here. Moreover, the explanation for not arguing the issue before the district court is obvious: it was an issue that did not yet exist.

■ The Briggs argue specifically that Miller cannot assert the strong arm powers

of the trustee. In *Grass v. Osborn*, 39 F.2d 461 (9th Cir.1930), this court held under the old Bankruptcy Act that the trustee's avoidance powers could not be transferred. While the Ninth Circuit has not had occasion to comment on the case since it was decided, the Tenth Circuit has done so recently. In *In re Sweetwater*, 884 F.2d 1323, 1327–28 (10th Cir.1989), the Court noted *Grass* among other cases and determined that it had been superseded by the enactment of the 1978 Bankruptcy Code. *Sweetwater* dealt specifically with 11 U.S.C. § 1123(b)(3)(B) pertaining to settlement and enforcement of a bankruptcy plan "by the debtor, by the trustee, or by a representative appointed for that purpose." It explained that a creditor was not allowed to assert the trustee's strong arm powers when done solely for the benefit of that single creditor. For example, the creditor in *Texas General Petroleum Corp. v. Evans (In re Texas General Petroleum Corp.)*, 58 B.R. 357 (Bankr.S.D.Tex.1986) was denied the power because he was not acting to benefit the plan as a whole and all similarly situated creditors.

We agree with the analysis of the Tenth Circuit. *Grass* has been superseded by statute and is no longer current law. If a creditor is pursuing interests common to all creditors or is appointed for the purpose of enforcement of the plan, he may exercise the trustee's avoidance powers.

Here, the trustee sold the estate's claim to the proceeds from the sale of the property with the tacit approval of the bankruptcy court. The court ordered the estate's interest in the appeal terminated and that all responsibility for the claim rested with Miller. While Miller may be acting on his own, he does so with the apparent blessing of the bankruptcy court and the trustee. Clearly, it was in the estate's interests to resolve its involvement in the dispute. In fact, while it was not argued by Miller, nor was he specifically identified for this purpose, he could best be identified as a representative appointed to enforce the debt in line with section 1123(b)(3)(B).

More importantly, the trustee originally asserted the avoidance powers in the bankruptcy and district courts. To refuse Miller the opportunity to stand in the trustee's shoes would frustrate the obvious wish of the bankruptcy court to end its participation in the matter. In *Texas General Petroleum*, there was no such involvement by the trustee or the bankruptcy court. The creditor was acting independently and for his sole benefit. For these reasons, we hold that Miller may assert the powers of the trustee.

## II. Constructive or Inquiry Notice.[1]

### Standard of Review

■ ·Generally, the bankruptcy court's findings of facts are reviewed under the clearly erroneous standard and its conclusions of law are reviewed de novo. *Ragsdale v. Haller*, 780 F.2d 794, 795 (9th Cir. 1986). Whether a purchaser has inquiry notice is largely a factual determination. In fact, while the district court applied a *de novo* standard of review, *In re Probasco*, 839 F.2d 1352, 1355 (9th Cir.1988), indicates that with a question of fact such as we have here, a clearly erroneous standard should apply. "We must accept the bankruptcy court's finding that there was no constructive notice unless we are 'left with a definite and firm conviction that a mistake has been committed.'" (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). In *Probasco*, the Court noted that the facts did not appear to be in dispute but it applied the clearly erroneous standard anyway because of "judicial economy." We will do likewise.

Finally, the bankruptcy court's conclusions of law are reviewed· de novo by the district court and we, in turn, review the district court's decision *de novo*. "Because this court is in as good a position as the district court to review the findings of the bankruptcy court, it independently reviews the bankruptcy court's decision." *Ragsdale*, at 795 (9th Cir.1986).

---

**1.** For purposes of clarity, Miller and the trustee    will hereinafter be referred to as one.

### Analysis

The bankruptcy trustee holds "strong arm powers" provided by 11 U.S.C. § 544(a)(3) which states the trustee is to be considered:

A bona fide purchaser of all real property ... from the debtor, against whom applicable law permits such transfer to be perfected, that attains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a)(3).

State law determines whether a party is a bona fide purchaser. *In re Washburn and Roberts, Inc.*, 795 F.2d 870, 872 (9th Cir.1986). In Washington, a bona fide purchaser is defined as "one who without notice of another's claim of right to, or equity in, the property prior to his acquisition of title, has paid the vendor a valuable consideration." *Miebach v. Colasurdo*, 102 Wash.2d 170, 175, 685 P.2d 1074, 1078 (1984). Washington, which is a race-notice state, generally holds that a bona fide purchaser prevails over a prior transferee who has failed to record. RCW 65.08.070; *Paganelli v. Swendsen*, 50 Wash.2d 304, 308, 311 P.2d 676, 678 (1957). Since the strong arm powers elevate the trustee to a level of a bona fide purchaser, a trustee without notice can generally avoid any unrecorded transfer of land in the State of Washington. *Washburn* at 872.

The Briggs admit that their deed of trust was unrecorded. This case turns on whether the petition itself put the trustee on sufficient inquiry or constructive notice of their prior security interest. *Miebach* stated:

It is a well-settled rule that where a purchaser has knowledge of information of facts which are sufficient to put an ordinarily prudent man upon inquiry, and the inquiry, if followed with reasonable diligence, would lead to the discovery of defects in the title or of equitable rights of others effecting the property in question, the purchaser will be held chargeable with knowledge thereof and will not be heard to say that he did not actually know of them. In other words, knowledge of facts sufficient to excite inquiry is constructive notice of all that the inquiry would have disclosed.

*Miebach*, 102 Wash.2d at 175–76, 685 P.2d at 1078 (quoting *Peterson v. Weist*, 48 Wash. 339, 341, 93 P. 519, 519 (1908).

The bankruptcy court found factually that a diligent title search would disclose a bankruptcy filing. Secondly, it found that "a reasonably prudent purchaser of the debtor's property would be placed on notice of the contents of bankruptcy pleadings from the time of their being filed." It determined, as a matter of law, however, that "any constructive notice of plaintiffs' interest achieved by filing the original bankruptcy pleadings comes too late to secure their interest in a position prior to that acquired by the trustee."

It is the Briggs' contention, obviously, that the bankruptcy court was wrong; that the debtor's involuntary petition contained facts sufficient to put the trustee on at least inquiry notice that they had a prior claim. Secondly, they assert that notice simultaneous with filing is sufficient.[2]

A trustee does not become a hypothetical bona fide purchaser if she has been put on constructive or inquiry notice. *In re Marino*, 813 F.2d 1562, 1565 (9th Cir. 1987). *McCannon v. Marston*, 679 F.2d 13, 16 (3rd Cir.1982) clarified the distinction by noting, "[t]he reference to the trustee's or creditors' knowledge appears to have originated out of a concern that actual knowledge might affect the trustee's status as a hypothetical lien creditor." *Id.* at 16. *McCannon* pointed out, however, that "Congress was careful to modify the status of bona fide purchasers by inserting the words 'against whom applicable law per-

---

**2.** The trustee's actual notice is of no consequence. Section 544(a) states that the trustee shall have the rights and powers of a bona fide purchaser "without regard to actual knowledge." *Probasco* and *In re Marino*, 813 F.2d 1562, 1565 (9th Cir.1987) have consequently held that "actual knowledge is irrelevant." *See McCannon v. Marston*, 679 F.2d 13, 16–17 (3rd Cir.1982).

mits such transfer to be perfected.' " *Id.* at 17.

■ The trustee argues that inquiry notice is insufficient because it is a species of actual notice which is irrelevant in this context. *See McCannon* note 2. He cites *Sands v. United States,* 198 F.Supp. 880, 884 (W.D.Wash.1960) *aff'd, First Federal Sav. & Loan Ass'n of Bremerton v. United States,* 325 F.2d 481 (9th Cir.1961), which states "actual notice may also consist of implied or inquiry notice."

This explanation directly conflicts with *Marino* which clearly mandated that a trustee may still be held accountable if put on inquiry notice. *Marino* controls, not simply because it is more recent, but because it discusses the relationship of section 544(a)(3) with state property law. Moreover, decisions such as *Probasco* discuss the trustee's notice requirement in terms of a constructive notice that encompasses inquiry notice. "A prudent purchaser inquiring as to the unity of ownership of all three parcels 'might have learned' of Probasco's interest in [the property]." *Id.* at 1356. *See also In re Tleel,* 876 F.2d 769, 772 (9th Cir.1989) (discussing the failure in that case to provide constructive or inquiry notice).

The trustee argues that even if inquiry notice could preclude him from invoking the avoidance powers, the information in the Briggs petition was insufficient to provide such notice. He contends further that any information or notice which he attained after that period did not bear on his status as a bona fide purchaser at the time of filing of the case.[3]

The Briggs Involuntary Creditors' Petition makes one reference to the deeds of trust:

2. The nature and amount of Petitioners' claims are as follows:

(a) ROBERT BRIGGS: Purchase of various Promissory Notes supposedly secured by assignments of Deeds of Trust with interest-only monthly payments which are now delinquent, some with said Notes have matured and are unpaid, in the aggregate amount of approximately $137,500.

E.R. at 17.

While the bankruptcy court held that this petition came too late to secure the Briggs' position ahead of the trustee's, the district court determined that under Washington law:

this language is sufficient to put an ordinarily prudent person on inquiry of the Briggs' interest in the real property in the form of Deed of Trust. Certainly, the language creates a circumstance which raises a duty to require further inquiry by the trustee to determine if there is a Deed of Trust. A reasonably diligent inquiry would have disclosed the unrecorded deeds of trust.

E.R. at 17–18.

While the bankruptcy court determined as a matter of law that inquiry notice that is simultaneous with filing "comes too late," the district court held that the filing would put the trustee, once appointed, on inquiry notice.

We are persuaded by the district court's holding. There is no practical reason why a trustee should not be put on inquiry notice by the very petition that created his position. A trustee who has not yet been appointed can hardly argue that he has been prejudiced by being charged with notice by the petition. Secondly, there is an abundance of authority making clear that state law determines a bona fide purchaser's status.[4] If the petition satisfies Washington law, the trustee has been put on inquiry notice.

---

**3.** This is true. *In re Gurs,* 27 B.R. 163 (9th Cir.BAP1983) defined a § 544(a)(3) hypothetical bona fide purchaser as one who is without actual knowledge "at the instant the petition is filed," and purchases property from the debtor for value and in good faith. Consequently, we will only discuss the ramifications of the petition itself.

**4.** *See In re Washburn and Roberts,* 795 F.2d at 872; *In re Tleel,* 876 F.2d at 772; *In re Marino,* 813 F.2d at 1565; *In re Torrez,* 63 B.R. 751, 754 (9th Cir.BAP1986), *aff'd* 827 F.2d 1299 (9th Cir. 1987).

"The burden of establishing that a purchaser had prior notice of another's claim, right, or equity, rests upon the one who asserts such prior notice." *Glaser v. Holdorf*, 56 Wash.2d 204, 209, 352 P.2d 212, 215 (1960) (citations omitted). In *Miebach*, the court noted that because the plaintiff was an experienced businessman and the debtors still had possession of the property, making continuous improvements on it, the plaintiff was on at least inquiry notice of their claim to the property. *Id.* 685 P.2d at 1077–78.

In *Peterson v. Weist*, 48 Wash. 339, 93 P. 519 (1908), the deed delivered to the plaintiff's vendor contained a reservation clause which stated:

> Saving and reserving therefrom all the timber of every kind and character now thereon, except cedar, reserving also the right to pass over the premises wherever necessary to remove the timber herein reserved; possession to be given of the timber and roads when A.C. Mowry's time is up upon the timber, viz.: 3 years from Feb. 10, 1902.

*Id.* at 340, 93 P. at 519.

The appellants in *Peterson* conceded they were aware of the reservation but did not know of the time allowed for removal. The court had no sympathy: "If they had no notice of the time allowed for removal of the timber it was solely because they made no inquiry. They could not blindly rely on the statement of their vendors and they made no inquiry from any other source." *Id.* (citations omitted).

This case is similar. The involuntary petition indicated the very people who instigated the bankruptcy proceedings held a deed of trust. This petition should have raised the trustee's suspicions and compelled him to inquire further. Since this was an involuntary petition, the trustee need only have contacted the Briggs to determine their specific interest. In fact, the trustee had a duty to inquire as to the nature of the Briggs' claim once he was appointed.

The bankruptcy court's findings of fact support this holding even if its conclusions of law do not. The court determined that "a reasonably prudent purchaser of the debtor's property would be placed on notice of the bankruptcy pleadings from the time of their being filed." This statement is consistent with the district court's holding that the petition simultaneously provided notice to the trustee. Consequently, while we adopt the bankruptcy's court's findings of fact, we hold that the district court arrived at the correct legal conclusion.

Finally, the trustee argues that pursuant to RCW 4.28.325, the Briggs were required to file a lis pendens with the auditor of the county in which the property was situated.[5]

■ The filing of a lis pendens in connection with a lawsuit against the record title holder of real property gives constructive notice of an action to subsequent purchasers from the record title holder. *In re Gurs*, 27 B.R. 163, 165 (9th Cir.BAP1983) (citing similar California law). The trustee, however, suggests that this is a *requirement* before he can receive constructive notice. We disagree. Although the statute indicates that filing a lis pendens provides constructive notice to the world, it does not suggest that this is the exclusive method of providing constructive or inquiry notice. *Miebach* indicates that the proper focus is on whether the purchaser has any knowledge or information or facts which would put an ordinarily prudent man upon inquiry. *Id.* 685 P.2d at 1078. The Briggs argue that any lis pendens filed by the Briggs prior to the filing of their involuntary creditor's petition would have been invalid. There was no pending action at that time and an action must be in fact pending for a lis pendens to be valid. *Dun-*

---

5. 4.28.325 reads in relevant part:
   In an action in a United States district court for any district in the State of Washington affecting the title to real property in the State of Washington, the plaintiff, at the time of filing the complaint ... *may* file with the auditor of each county in which the property is situated a notice of a pendency of the action.... From the time of the filing only shall the pendency of the action be constructive notice to a purchaser or encumbrancer of the property affected thereby ...
   (Emphasis added.)

*ham v. Tabb,* 27 Wash.App. 862, 866, 621 P.2d 179, 181 (1980). Their argument has logic but we find determinative the fact that the lis pendens was not the only method by which constructive notice could be established. The petition, itself, provided adequate inquiry notice. Once the trustee was appointed, he had a duty to investigate the Briggs' deed of trust.

AFFIRMED.