In re Kent Ellis **HARVEY,** aka Harvey Construction Company, Total Concepts Home Center; Linda Ann Harvey, Debtors.

Suzanne L. **DECKER,** Trustee, Appellee,

v.

J. CYRIL JOHNSON CORPORATION PROFIT SHARING PLAN, et al.; Kent Ellis Harvey; Linda Ann Harvey, Appellees.

BAP No. NC–97–1742–RHB.

Bankruptcy No. 93–57084–JRG.

Adversary No. 94–5019.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted May 21, 1998.

Decided July 17, 1998.

---

Jeffrey C. Wurms, Wendel, Rosen, Black & Dean, Oakland, CA, for Suzanne L. Decker, Trustee.

Julie Rome–Banks, Binder & Malter, San Jose, CA, for J. Cyril Johnson Corporation Profit Sharing Plan, et al.

Before: RUSSELL, HAGAN, and BRANDT, Bankruptcy Judges.

### OPINION

RUSSELL, Bankruptcy Judge.

The bankruptcy court determined on summary judgment that the chapter 7[1] trustee

---

1. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code,

could not avoid an unrecorded equitable interest in real property under § 544(a)(3) and/or CAL. CORP. CODE § 15010(3) because the debtors' schedules provided constructive notice of the creditors' interest in the property, and the trustee thus lacked the status of a bona fide purchaser. The bankruptcy court concluded following trial that the real property and its sales proceeds belonged to a joint venture created by a prepetition agreement between the debtor/husband and the creditors, and directed the trustee to release the net sales proceeds of the property to the creditors. The trustee appeals. We REVERSE and REMAND with instructions that the bankruptcy court enter summary judgment in favor of the trustee.

## I.  FACTS

Appellant Kent Harvey and appellees J. Cyril Johnson Corporation Profit Sharing Plan, et al. (the "creditors") entered into a written agreement dated May 23, 1991 (the "Agreement"). In sum, the Agreement provided that the creditors would transfer the legal title to a parcel of real property located at 1624 Creek Drive, San Jose, California (the "Property") to Harvey. Harvey agreed to obtain a $275,000.00 construction loan in his name and to use the funds to build a new single family residence on the Property. The Property would be placed on the market for sale following construction. The $275,000.00 construction loan would be paid from the anticipated sales proceeds, the next $180,000.00 of the sale proceeds would be paid to the creditors, and any remaining net proceeds would be divided equally between Harvey and the creditors. Harvey and the creditors agreed to share any loss equally if no profit remained.

Harvey was not required to, and did not, provide the creditors with a promissory note or a deed of trust. Escrow was opened and a grant deed was recorded on August 6, 1991 which transferred title to the Property to Harvey and his wife, appellant Linda Ann Harvey, as their community property. The Harveys obtained a one-year construction

11 U.S.C. §§ 101–1330 and the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

loan from Foothill Bank in July 1991, and were wholly responsible for payment of all amounts due under the construction loan. Construction of the residence began in September 1991 and was completed by May 1992.

Following completion of construction, the Harveys listed the Property for sale with their adult son, a licensed real estate broker, with the creditors' consent. The Harveys were unable to sell the Property in time to pay the balance of the loan from Foothill Bank when it became due in June 1992, and several extensions of the maturity date were arranged with the Bank. The Harveys listed the Property for sale with a different broker in January 1993.

The Harveys and their minor daughter moved into the Property as their residence in March 1993. They defaulted on the loan in May 1993, and the Bank recorded a Notice of Default in June 1993. The creditors advanced approximately $14,750.00 to cure the default and reinstate the loan. The creditors sent a letter to the Harveys in June 1993 objecting to their residing in the Property; however, the Harveys did not move from the Property. They changed real estate brokers a third time in October 1993 but were still unable to sell the Property.

The Harveys filed a voluntary chapter 7 petition and schedules on November 3, 1993. The petition and schedules were stapled together as one document, and the court clerk date-stamped the face page of the petition only. The petition listed the Property as the debtors' residence. The schedules included nine references to the creditors, in addition to various references to the Property.

Specifically, the debtors claimed ownership of the entire Property in fee simple on Schedule A, and claimed a $75,000.00 homestead exemption in the Property on Schedule C. They listed the creditors on Schedule F as holders of unsecured claims arising from unsecured loans made to the debtors for the purchase of the Property,[2] and listed the

2.  The following two entries on "Schedule F— Creditors Holding Unsecured Nonpriority Claims" are representative of all of the references in the schedules to the creditors:

Agreement on Schedule G as an executory contract consisting of an "Unsecured loan/joint venture re sale and renovation of 1624 Creek Drive, San Jose.—May 1991 contract."[3]

Appellant Suzanne L. Decker was appointed as the chapter 7 trustee to administer the case. She received an offer for the purchase of the Property from a third party in November 1993, which she accepted subject to court approval. She obtained the creditors' consent to sell the Property free and clear of all liens and interests, with the liens and interests to attach to the sales proceeds. The court entered an order confirming the sale in February 1994. The trustee received net sales proceeds of approximately $95,206.08.

The creditors filed a complaint initiating this adversary proceeding in January 1994, and filed a first amended complaint in June 1994. The first amended complaint contained a claim for declaratory relief that requested a judicial determination of whether the debtors' schedules contained facts and statements sufficient to put the trustee on constructive notice of the creditors' unrecorded interest in the Property at the commencement of the case, so as to defeat her status as a hypothetical bona fide purchaser ("BFP") under § 544(a)(3). It also sought a determination of whether the trustee could avoid the creditors' interest in the Property and the sales proceeds, requested the imposition of both a constructive trust and a resulting trust on the Property, and sought turnover of all of the sales proceeds to the creditors.

The trustee's answer to the first amended complaint denied all of the material allegations, and included affirmative defenses which asserted that the trustee's avoiding powers under § 544(a)(3) defeated any claim of the creditors in the Property or its proceeds, and that the statements in the debtors' schedules to the effect that creditors had

"unsecured loans" connected with the Property were not sufficient to constitute "notice" to the trustee and to defeat her status as a BFP under § 544(a)(3).

The trustee and the creditors filed cross-motions for summary judgment in July 1995. The trustee's motion argued that her powers as a BFP under § 544(a)(3) could defeat any equitable interest asserted by the creditors. The trustee also argued that the creditors were prevented under CAL. CORP. CODE § 15010(3) from recovering the Property on the basis that § 15010(3) authorized the debtors, as holders of legal title to the Property at the commencement of the bankruptcy case, to sell the creditors' interest in the Property to a BFP regardless of whether the BFP had notice of the creditors' interest as long as the purchaser had no knowledge that the seller lacked authority to convey good title. She asserted that she was a BFP without knowledge that Harvey lacked authority to sell the Property.

The creditors' motion argued that the Property was not property of the bankruptcy estate, and the trustee was not a BFP under § 544(a)(3) because Schedule G provided the trustee with constructive or inquiry notice of the creditors' alleged equitable interest in the Property.

Following a hearing on the motions, the bankruptcy court entered an order on December 18, 1995 that granted summary judgment in favor of the creditors and denied the trustee's motion. The court found that the language contained in Schedule G was sufficient to provide constructive notice of the creditors' interest in the property at the commencement of the debtors' bankruptcy case, and thus the trustee could not avoid the creditors' alleged equitable interest in the Property and/or the sales proceeds pursuant to § 544(a)(3) or CAL. CORP. CODE § 15010(3).[4]

DUNNE, THOMAS & RUBY c/o Clifford Chernick, Esq., 770 Menlo Ave. # 101, Menlo Park, CA 94025, unsecured loan re purchase of 1624 Creek Drive, San Jose property, $180,000.00 HUGHES, GLENORA, 836 Purdue Court, Merced, CA 95340, Re purchase loan of 1624 Creek Drive, incl. above[.]

**3.** The creditors do not contend that any constructive notice of their interest in the Property existed other than that contained in the debtors' schedules, and acknowledge that they never received or recorded a deed of trust regarding the Property to evidence their interest in it.

**4.** The court additionally found that the creditors had previously withdrawn their claim for a con-

The court then conducted a two-day trial on the issue of whether the Agreement created a joint venture for which Harvey held the Property in trust, or whether it was a sales agreement by which the Harveys took clear title to the Property.[5] Following trial, the court filed a Memorandum Decision on September 2, 1997, which it designated as findings of fact and conclusions of law under Rule 7052 and FED. R. CIV. P. 52.

The court found by clear and convincing evidence that the parties intended a joint venture rather than a sale of the Property, that the Agreement created a joint venture, and that the Harveys held both legal and equitable title to the Property in trust for the joint venture. The court determined that the creditors were entitled to the entire net proceeds of sale of the Property under the terms of the Agreement regarding profit and loss calculations.[6] The court entered a judgment after trial on November 18, 1997 that ordered the trustee to release the net sales proceeds to the creditors.

On September 29, 1997, the trustee filed a notice of appeal of the order on the cross-motions for summary judgment filed on December 18, 1995, and the judgment after trial filed on November 18, 1997.[7]

## II. ISSUE

Whether the language contained in the debtors' schedules was sufficient to provide constructive notice of the creditors' unrecorded equitable interest in the debtors' real property, so as to prevent the trustee from avoiding the interest as a bona fide purchaser pursuant to § 544(a)(3) and/or CAL. CORP. CODE § 15010(3).

## III. STANDARD OF REVIEW

The decision to grant a motion for summary judgment is subject to *de novo* review. *In re Yepremian,* 116 F.3d 1295, 1296 (9th Cir.1997); *In re Marino,* 813 F.2d 1562, 1564 (9th Cir.1987). The bankruptcy court's findings of fact are reviewed under the clearly erroneous standard and its conclusions of law are reviewed *de novo.* *In re Professional Inv. Properties of America,* 955 F.2d 623, 626 (9th Cir.1992), *cert. denied sub nom.,* 506 U.S. 818, 113 S.Ct. 63, 121 L.Ed.2d 31 (1992) (citing *Ragsdale v. Haller,* 780 F.2d 794, 795 (9th Cir.1986)).

Whether circumstances are sufficient to require inquiry of another's interest in property is a question of fact, even where there is no dispute over the historical facts. *In re Weisman,* 5 F.3d 417, 420 (9th Cir. 1993); *In re Probasco,* 839 F.2d 1352, 1355 (9th Cir.1988). A bankruptcy court's findings regarding constructive notice must be accepted unless the reviewing court is "left with the definite and firm conviction that a mistake has been committed." *Probasco,* 839 F.2d at 1355 (quoting *U.S. v. U.S. Gypsum Co.,* 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948)).

## IV. DISCUSSION

Section 544 creates the "strong arm" powers of a trustee, one of which clothes a trustee with the status of a BFP of real property. 11 U.S.C. § 544(a)(3).[8] *See also*

structive trust, and that the court could not decide the issue of the resulting trust because the creditors had not presented any evidence on that issue in their summary judgment motion.

5. The parties also reserved the issue of the Harveys' entitlement to their claimed homestead exemption for trial, although the Harveys conceded that the court did not need to reach the exemption issue if it found that the Agreement formed a joint venture.

6. The court did not reach the homestead exemption issue due to its findings regarding the joint venture.

7. The jurisdictional checklist prepared by the BAP states that the Notice of Appeal filed on

September 3, 1997 was premature but authorized under Rule 8002(a).

8. Section 544(a)(3) provides:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

. . . .

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of

*Professional Inv. Properties*, 955 F.2d at 627; *In re Marino*, 813 F.2d 1562, 1565 (9th Cir. 1987); *In re Tleel*, 79 B.R. 883, 887 (9th Cir. BAP 1987), *aff'd* 876 F.2d 769 (9th Cir.1989). Although a trustee's qualification as a BFP under § 544(a) is a question of federal law, state law determines whether a trustee's status as a BFP will defeat the rights of persons against whom a trustee seeks to assert her powers. *In re Weisman*, 5 F.3d 417, 420 (9th Cir.1993); *Professional Inv. Properties*, 955 F.2d at 627; *Marino*, 813 F.2d at 1565. In this case, California law applies and determines whether the trustee can avoid the creditors' unrecorded equitable interest in the Property.

Under California law, every conveyance of real property must be recorded in order to be valid against a BFP of the same property, who in good faith and for valuable consideration records first. CAL. CIV. CODE § 1214.[9] Thus, under California law a BFP who records prevails over a prior transferee who failed to record. *In re Probasco*, 839 F.2d 1352, 1354 (9th Cir.1988); *In re Duncombe*, 143 B.R. 243, 245 (Bankr.C.D.Cal.1992).

▓▓▓ Actual or constructive notice of a prior unrecorded transfer removes a subsequent purchaser from the protection of the recording acts. *Probasco*, 839 F.2d at 1354. While the language of § 544(a) renders a trustee's actual knowledge irrelevant, it does not make a trustee's constructive or inquiry notice irrelevant. *Id.* at 1354–55. A trustee charged with constructive or inquiry notice does not become a hypothetical BFP. *Professional Inv. Properties*, 955 F.2d at 627 (citing *Marino*, 813 F.2d at 1565). The determination of whether a trustee should be

charged with constructive or inquiry notice under California law is governed by CAL. CIV. CODE § 19, which provides:

§ 19.  Constructive notice

Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned such fact.

CAL. CIV. CODE § 19 (West 1997). *See also Weisman*, 5 F.3d at 420–21.

The Ninth Circuit has held that language on an involuntary petition filed by a petitioning creditor can give constructive notice of a claim to real property to a trustee. *Professional Inv. Properties*, 955 F.2d at 629.[10] The bankruptcy court in this case relied on *Professional Inv. Properties* for its determination that the debtors' schedules imparted constructive notice to the trustee of the creditors' unrecorded equitable interest in the Property.

In *Professional Inv. Properties*, Robert and Grace Briggs had received promissory notes and deeds of trust as security for a loan to the debtor, but had not recorded the deeds. The Briggs filed an involuntary chapter 7 petition against the debtor when they learned of its financial difficulties. The involuntary petition contained the following single reference to their deeds of trust:

2.  The nature and amount of Petitioners' claims are as follows:

(a) ROBERT BRIGGS: Purchase of various Promissory Notes supposedly secured by assignments of Deeds of Trust with interest-only monthly payments which are

---

the case, whether or not such a purchaser exists.

**9.** CAL. CIV. CODE § 1214 (West 1998) provides:

§ 1214.  Prior recording of subsequent conveyances, mortgages, judgments

Every conveyance of real property or an estate for years therein, other than a lease for a term not exceeding one year, is void as against any subsequent purchaser or mortgagee of the same property, or any part thereof, in good faith and for a valuable consideration, whose conveyance is first duly recorded, and as against any judgment affecting the title, unless the conveyance shall have been duly recorded prior to the record of notice of action.

**10.** Traditionally, however, constructive notice has been found in those instances where (1) the claimant is in clear and open possession or occupancy of the property, which is inconsistent with title to the property, *Probasco*, 839 F.2d at 1354, 1356, *In re Thomas*, 147 B.R. 526, 530 (9th Cir. BAP 1992), *aff'd* 32 F.3d 572 (9th Cir.1994), *cert. denied sub nom.*, 513 U.S. 1079, 115 S.Ct. 727, 130 L.Ed.2d 631 (1995); (2) the claim has been recorded, *Thomas*, 147 B.R. at 530; or (3) a lis pendens has been recorded, *In re Gurs*, 27 B.R. 163, 165 (9th Cir. BAP 1983).

now delinquent, some with said Notes have matured and are unpaid, in the aggregate amount of approximately $137,500.

955 F.2d at 628.

The Briggs filed a motion for the appointment of a trustee simultaneously with the filing of the involuntary petition, and the real property became an asset of the bankruptcy estate under § 541. The Briggs anticipated a sale of the real property by the trustee and attempted to impose an equitable lien on the sales proceeds. The trustee in turn attempted to avoid the lien pursuant to § 544(a)(3). The bankruptcy court denied the Briggs' summary judgment motion and held that they were unsecured creditors of the estate. *Id.* at 625.

The Ninth Circuit Court of Appeals held that the contents of the involuntary petition provided constructive notice of the Briggs' claim, stating:

> The involuntary petition indicated the very people who instigated the bankruptcy proceedings held a deed of trust. This petition should have raised the trustee's suspicions and compelled him to inquire further. Since this was an involuntary petition, the trustee need only have contacted the Briggs to determine their specific interest.

*Id.* at 629. The Ninth Circuit determined that this language put the trustee on inquiry notice sufficient to defeat his hypothetical BFP status. *Id.*

■ In this case, the bankruptcy court cited *Professional Inv. Properties* for the proposition that "It is established that a debtor's bankruptcy petition can put a trustee on inquiry notice of unrecorded interests in real property." ER, Tab 18 (Order On Cross Motions For Summary Judgment), pp. 170–71. The bankruptcy court also quoted *Professional Inv. Properties,* 955 F.2d at 627, as stating:

> It is a well-settled rule that where a purchaser has knowledge of information of facts which are sufficient to put an ordinarily prudent man upon inquiry, and the inquiry, if followed with reasonable diligence, would lend to the discovery of ... equitable rights of others effecting the property in question, the purchaser will be

held chargeable with knowledge thereof and will not be heard to say that he did not actually know of them. In other words, knowledge of facts sufficient to excite inquiry is constructive notice of all that the inquiry would have disclosed.

The bankruptcy court in the matter before us described the parties' contentions on summary judgment regarding the debtors' schedules as follows:

> Plaintiffs state in their moving papers that there are nine independent references in debtors' schedules to the claims of plaintiffs. Plaintiffs make particular reference in their papers to the description of their claim on Schedule "G," and contend that the description was sufficient to put the trustee on constructive notice of the claims of plaintiffs. The trustee argues that the description on Schedule "G" does not imply that the joint venture agreement involves the ownership of the property, only its renovation and sale, and that the remaining references in the schedules report that the debtors owned the property in fee simple and listed plaintiffs as unsecured creditors. The trustee argues that the schedules did not provide her with constructive notice of the claims of plaintiffs in the property.

Based on the above, the bankruptcy court found that:

> [t]he language contained in Schedule "G" was sufficient to put the trustee on notice of the existence of the joint venture, and that further inquiry would have revealed the existence and terms of the joint venture agreement, including the conditions upon which the real property was transferred to defendant Kent Harvey, and the agreed allocation of any sales proceeds. Pursuant to Cal. Civ. Code § 19, the trustee is charged with having constructive notice of such facts. Given such notice, the court finds that the trustee is not a bona fide purchaser under state law, and that plaintiffs' interest in the sales proceeds held by the trustee are accordingly not avoidable under § 544(a)(3).

The trustee reiterates on appeal that the language used to describe the Property and the creditors in the debtors' schedules was

too vague and inconsistent to provide constructive notice of the creditors' alleged equitable interest in the Property.[11] She asserts that all but one of the references to the Property and the creditors were consistent with the debtors' position that the debtors held full legal and equitable title to the Property and that the creditors were unsecured claimants with no interest in the Property. She argues that the description on Schedule G was "undefined" and did not necessarily imply that the Agreement involved ownership of the Property, but only its renovation and sale. We agree.[12] We consider the bankruptcy court's conclusion that *Professional Inv. Properties* was dispositive unwarranted, given the dissimilar interests indicated in the bankruptcy papers, and the language on Schedule G in this case.[13]

As the creditors note, the Court of Appeals held that the language on the involuntary petition in *Professional Inv. Properties* raised a duty on the part of that trustee to inquire whether a deed of trust existed. It is undisputed in this case that the creditors never received a deed of trust or other document evidencing a security interest in the Property, and that they claimed only an interest in the Property's *sales proceeds*. (Emphasis added.) [14]

The evidence before the court on the cross-motions for summary judgment clearly showed that Harvey had the authority to convey good title to the Property. Had a BFP inquired of the creditors regarding their interest in the Property, the correct response would have been that they claimed only an interest in the proceeds of sale of the Property, and not a real property security interest; and that Harvey had authority to convey good title to it. Based upon this information, a BFP would have had no reason not to complete a sale. The creditors' remedy after sale would have been to pursue the Harveys for their interest in the proceeds; here, in bankruptcy, it is to file an unsecured claim. Thus, the trustee can avoid the creditors' claimed interest as a BFP pursuant to § 544(a)(3).[15]

## V.  CONCLUSION

The bankruptcy court based its denial of summary judgment in favor of the trustee creditors upon the erroneous determination that the trustee lacked hypothetical bona fide purchaser status under § 544(a)(3). We REVERSE because the notice imparted by

11.  Although the creditors allege that the trustee has raised the "vagueness" argument for the first time on appeal, they acknowledge that the court addressed the sufficiency of the language on Schedule G in its Order on Cross–Motion for Summary Judgment, and address the argument in their appellate brief.

12.  The trustee presents two additional arguments on appeal regarding constructive notice. We conclude that the first argument regarding "vagueness" is dispositive, and therefore will not address the trustee's other two arguments.

For information purposes, the trustee contends as a second argument that constructive notice can only be provided by recorded instruments that convey title to real property and are authorized to be recorded, and argues that Schedule G could not provide constructive notice as a matter of law because it was not a conveyance instrument.

As a third argument, the trustee contends that even if Schedule G were the type of conveyancing instrument that could provide constructive notice, it was filed too late to provide notice because schedules are deemed filed *after* the filing of the petition that commences a bankruptcy case. She cites *In re Castro*, 158 B.R. 180 (Bankr.C.D.Cal.1993) for this proposition.

13.  The creditors acknowledge on appeal the absence of law directly on point on this issue, and concede that the bankruptcy court relied on *Professional Inv. Properties* in the absence of any directly applicable case law.

14.  The creditors also place considerable emphasis on the Ninth Circuit's observation that a reasonably prudent purchaser of real property would discover a debtor's bankruptcy filing by performing a simple title search. 955 F.2d at 627, 629. They argue that a title search in this case would have revealed the existence of the debtors' schedules, which would charge the trustee with notice of their contents. However, there is no evidence in the record that a notice of the debtors' bankruptcy case was ever recorded.

15.  Based upon this disposition, this Panel does not need to address the parties' arguments concerning the trustee's ability to avoid the creditors' alleged interest under CAL. CORP. CODE § 15010(3), or their arguments concerning the bankruptcy court's findings and conclusions in the Memorandum Decision and judgment after trial regarding the Agreement and the joint venture purportedly created thereby.

Schedule G was not of an interest in (or secured by) the real property, and RE-MAND the matter with instructions that the bankruptcy court enter summary judgment in favor of the trustee.