In re Marc A. WEISMAN and, Sheila J. Weisman, Debtors.

Jerome E. ROBERTSON, Trustee, Plaintiff–Appellee–Cross–Appellant,

v.

Marc PETERS, Defendant–Appellant–Cross–Appellee.

Nos. 91–16518, 91–16600.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 4, 1993.

Decided Sept. 21, 1993.

418

Esther Z. Hirsh, Long & Levit, San Francisco, CA, for defendant-appellant-cross-appellee.

Cathleen Cooper Moran (argued) and Michelle K. Rubin (on briefs), Mountain View, CA, for plaintiff-appellee-cross-appellant.

Before: FLETCHER, REINHARDT, and NOONAN, Circuit Judges.

REINHARDT, Circuit Judge:

We are faced with the question whether under California law a husband's occupation of his family residence with his second wife

can create a duty in a bona fide purchaser for value or a bankruptcy trustee to inquire as to whether his former wife still retains the ownership interest in that property that appears of record. Guided by reality, our answer is yes.

## I. Factual and Procedural Background [1]

Debtor Sheila Weisman (formerly Sheila Peters) married defendant Marc Peters in 1963. They bought a house, which is the subject of the instant dispute, in Campbell, California in 1967. The couple lived in the Campbell residence until March 1985, when Sheila Peters moved out. The couple's marriage was dissolved that fall, but the judgment of dissolution was not recorded. Pursuant to their property settlement, Marc Peters had the right to purchase his former wife's interest in the house they had previously shared. He did so by refinancing and using the loan as the purchase price. However, the lender required Sheila Weisman, who had married debtor Marc Weisman in November 1985, to remain on the title to the property.

As a result of the refinancing transaction, title to the Campbell residence was transferred from Marc Peters and Sheila Peters, as community property, to Marc Peters and Sheila Weisman (a married woman), as tenants in common.[2] The deed reflecting the transfer was dated June 23, 1986, and was recorded July 2, 1986. Marc Weisman then executed a quit claim deed in favor of Sheila Weisman on June 24, 1986, which was also recorded on July 2, 1986. After receiving payment from Marc Peters for her interest in their former home, Sheila Weisman executed a quit claim deed in favor of him on June 25, 1986. The deed was delivered on

August 27, 1986, but *was not recorded* until December 8, 1988. Marc Peters married Nianne Neergaard in August 1986 and the couple has lived in the Campbell residence since that time.

■ In August 1988, Sheila Weisman and her second husband, Marc Weisman, filed a voluntary bankruptcy petition under Chapter 7 of the Bankruptcy Code (liquidation). A trustee, plaintiff Jerome Robertson, was appointed. After learning that Sheila Weisman was a record title holder to the Campbell residence, the trustee filed a complaint against Marc Peters for authorization to sell that property, as permitted by the Bankruptcy Code.[3] After hearing oral argument, the bankruptcy court found for defendant Peters. The district court reversed the bankruptcy judge's finding as clearly erroneous and entered judgment for the trustee. Peters appealed and the trustee cross-appealed to this court.[4] Because both the bankruptcy court and district court decisions were final, we have jurisdiction under 28 U.S.C. section 158(d). We independently review the bankruptcy court's decision and do not give deference to the district court's determinations. *Briggs v. Kent (In Re Professional Investment Properties of Am.)*, 955 F.2d 623, 626 (9th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 63, 121 L.Ed.2d 31 (1992). We apply a clearly erroneous standard to the bankruptcy court's findings of fact and review its conclusions of law *de novo*. *Id.*

## II. Analysis

■ The Bankruptcy Code, 11 U.S.C. section 544(a)(3),[5] gives a bankruptcy trustee

---

1. The historical facts are undisputed and the parties have stipulated to them.

2. Although Sheila Weisman was remarried, her interest in the house was held as separate property.

3. Prior to the trustee's filing of the adversary proceeding, the Weismans received a discharge of their debts.

4. In his cross-appeal, the trustee contends that the district court should have reviewed the relevant questions in this case *de novo* instead of

under the clearly erroneous standard, but argues for affirmance. His cross-appeal is dismissed as unnecessary. There was no need to appeal in order to object to the standard of review used below. The trustee may raise his complaints regarding any aspect of the district court's opinion as part of his effort to defend of the judgment.

5. It provides:

1(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any

"strong arm powers" to avoid transfers of real property of the debtor that would be voidable under state law by a bona fide purchaser (BFP) of the property from the debtor. *Professional Investment*, 955 F.2d at 627; *Tleel v. Chbat (In Re Tleel)*, 876 F.2d 769, 770 (9th Cir.1989); *Probasco v. Eads (In Re Probasco)*, 839 F.2d 1352, 1354 (9th Cir. 1988). While whether a trustee qualifies under section 544(a)(3) is a question of federal law, state law determines whether the trustee's status as a BFP will defeat the rights of the person against whom the trustee seeks to assert his powers. 4 *Collier on Bankruptcy*, ¶ 544.02, p. 544–8 to 11 (Lawrence P. King ed., 15th ed. 1992); *Tleel*, 876 F.2d at 772; *Gurs v. Walsh (In Re Gurs)*, 27 B.R. 163, 165 (Bankr. 9th Cir.1983).[6] Here, California law applies and will determine whether the trustee can set aside Sheila Weisman's (hereinafter "Weisman") unrecorded transfer of all of her interests in the house to Marc Peters (hereinafter "Peters").

■ California is a race-notice jurisdiction and requires every conveyance of real property to be recorded in order to be valid against a subsequent purchaser of the same property. Cal.Civil Code § 1214.[7] However, an unrecorded instrument is valid as between the parties thereto and those who have notice of it. Cal.Civil Code § 1217. Although 11 U.S.C. section 544(a)(3) creates the legal fiction of a perfect BFP and explicitly renders the trustee's actual notice of prior grantees irrelevant, *Professional Investment Properties*, 955 F.2d at 627 n. 2, we have held that constructive or inquiry notice obtained in

accordance with California Civil Code section 19 can defeat a trustee's claim. *Probasco*, 839 F.2d at 1354–56.

■■ The resolution of this case turns on California Civil Code section 19. It provides:

Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned such fact.

In this context the question is whether a prudent purchaser, in light of the information reasonably available to him on the date the Weismans filed their bankruptcy petition, would have made an inquiry into the possibility that Peters owned his residence outright. A "prudent purchaser" describes someone who is shrewd in the management of practical affairs and whose conduct is marked by wisdom, judiciousness, or circumspection. *See Probasco*, 839 F.2d at 1356. Such a purchaser will be charged with knowledge of 1) the nature of the property; 2) its current use; 3) the identities of the persons occupying it; 4) the relationship among them; and, 5) the relationship between those in possession and the person whose purported interest in the property the purchaser intended to acquire. *See id.* at 1354–56; *Huber v. Danning (In re Thomas)*, 147 B.R. 526, 530–31 (Bankr. 9th Cir.1992). In this connection, he is charged with knowledge of information that a reasonable inspection of the property would have revealed. 3 Harry D. Miller & Marvin B. Starr, *Current Law of California Real Estate*, § 8.65 at 393 (2d ed. 1989).

transfer of property of the debtor ... that is voidable by—

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

6. *Gurs* defined the hypothetical BFP of § 554(a)(3) as a person who (1) at the instant the bankruptcy petition is filed purchases from the debtor; (2) for value; (3) in good faith; (4) without actual knowledge of any defect or limitation in title; (5) every interest in real property the debtor could have purported to convey with-

out the terms of the conveyancing itself evidencing irregularity; (6) by an instrument that adheres to all formal requisites usually and regularly followed in the relevant jurisdiction; (7) who as of the moment of purchase takes all unilateral steps to perfect the conveyance. 27 B.R. at 165.

7. That section provides:

Every conveyance of real property, other than a lease for a term not exceeding one year, is void as against any subsequent purchaser or mortgagee of the same property, or any part thereof, in good faith and for a valuable consideration, whose conveyance is first duly recorded, and as against any judgment affecting the title, unless such conveyance shall have been recorded prior to the record of notice of action.

■ Whether the circumstances are sufficient to require inquiry as to another's interest in property for the purposes of section 19 is a question of fact, even where there is no dispute over the historical facts. *Probasco,* 839 F.2d at 1355; *see also Natural Resources, Inc., v. Wineberg,* 349 F.2d 685, 690 (9th Cir.1965) (under California law whether possession is such to require inquiry is question of ultimate fact), *cert. denied,* 382 U.S. 1010, 86 S.Ct. 617, 15 L.Ed.2d 525 (1966). If, under the circumstances, the trustee should have made an inquiry as to whether Weisman had transferred all of her interests in the Campbell residence to Peters, then section 19 charges the trustee with knowledge of the unrecorded deed that did just that. Such knowledge would prevent the trustee from prevailing in this strong arm action. *See Probasco,* 839 F.2d at 1354–56.

Resolution of the question whether the trustee was under a duty to make an inquiry depends in part on the interplay of several long established and related principles of California real estate law:

1) Open, notorious, exclusive, and visible possession of real property by one other than the vendor is notice sufficient to put a prospective purchaser on inquiry of any rights held by the occupant, unless there is no duty under the circumstances to make inquiry.[8]

2) There is no duty to inquire upon a subsequent purchaser regarding any unknown claims or interests by a person in possession of real property where the occupant's possession is consistent with the record title.[9]

3) Where possession is inconsistent with the record title and thereby creates a duty to inquire, a prospective purchaser is charged with constructive notice of all facts that would be revealed by a reasonably diligent inquiry, regardless of whether the purchaser has ever seen the property.[10]

The essential dispute between the parties is whether Peters' and Neergaard's possession of the house was consistent or inconsistent with the record title in Peters' and Weisman's names. The trustee argues that the possession was consistent because, as a cotenant, Peters had the right to possess the whole of the property. The trustee maintains it was immaterial that Weisman lived elsewhere and that Neergaard resided on the property. Peters contends possession was inconsistent with title because of a combination of 1) the change in title from Marc Peters and Sheila Peters to Marc Peters and Sheila Weisman, a married woman, demonstrating that the couple had divorced and Sheila had remarried, and 2) the presence of Peters' second wife, Neergaard, on the property with him. Peters argues that knowledge of these facts would have caused a prudent purchaser to conduct an inquiry.

The trustee places great reliance on the case of *Schumacher v. Truman,* 134 Cal. 430, 66 P. 591 (1901), as did the district court. There, a husband and wife owned a parcel of real property. They entered into an unrecorded agreement giving the husband complete management and control over the property. Later the couple divorced and they took title as tenants in common. The husband then subleased his interest in the property to a tenant, who took up exclusive occupation of the property. The wife sold her interest in the property to a third party. The husband argued that anyone in the wife's chain of title took an interest in the property subject to the unrecorded agreement giving him exclusive management and control. The California Supreme Court disagreed and held that there was no constructive notice of the unrecorded agreement be-

**8.** *Gates Rubber Co. v. Ulman,* 214 Cal.App.3d 356, 366, 262 Cal.Rptr. 630, 636 (1989), *review denied; Three Sixty Five Club v. Shostak,* 104 Cal.App.2d 735, 738, 232 P.2d 546 (1951); *Basch v. Tide Water Associated Oil Co.,* 49 Cal.App.2d Supp. 743, 748, 121 P.2d 545 (1942).

**9.** *Caito v. United California Bank,* 20 Cal.3d 694, 702, 144 Cal.Rptr. 751, 755, 576 P.2d 466 (1978); *Gates Rubber Co.,* 214 Cal.App.3d at 366–70, 262 Cal.Rptr. at 636–39; *Kane v. Hunt-*

*ley Financial,* 146 Cal.App.3d 1092, 1095, 194 Cal.Rptr. 880, 882 (1983); 3 Miller & Starr, § 8.65 at 393.

**10.** *Bessho v. General Petroleum Corp.,* 186 Cal. 133, 139, 199 P. 22 (1921) (in bank); *Claremont Terrace Homeowners' Ass'n v. United States,* 146 Cal.App.3d 398, 408–09, 194 Cal.Rptr. 216, 222 (1983); *Basch,* 49 Cal.App.2d at 745, 121 P.2d 545; 3 Miller & Starr, § 8:65, at 393–94.

tween the wife and husband. It reasoned that the exclusive possession by the husband's tenant was consistent with record title and, therefore, a prospective purchaser had no duty to make further inquiry. The tenant's possession was considered to be the equivalent of sole occupation by the ex-husband, and it could be presumed that sole possession by him was in the interest and benefit of the absent cotenant, his ex-wife. *Schumacher*, 134 Cal. at 433, 66 P. 591.

 That same presumption is inapplicable here. Inquiry becomes a duty for a prospective purchaser of property when the visible state of affairs is inconsistent with the alleged rights of the person who has proposed to sell the property in question. *Id.* at 432, 66 P. 591. California courts have not only looked to whether possession was technically inconsistent with title, but have also made a common-sense examination of whether the facts and circumstances of a particular case created a sufficient probability of inconsistency to create a duty to inquire. *See Three Sixty Five Club v. Shostak,* 104 Cal. App.2d 735, 739, 232 P.2d 546 (1951). Here, the trustee is charged both with knowing that Neergaard resided on the property with Peters and that she was his second wife. He is also, of course, charged with knowledge of Weisman's remarriage because that information is on the recorded deed to the Campbell residence.

Peters and his second wife, Neergaard, occupied their family home for all the world to see. They did so as a married couple. Record title placed a one-half ownership interest in their home in the hands of Weisman, Peters' former wife, who herself had already remarried. Under the circumstances the bankruptcy court could reasonably find that Peters' and Neergaard's possession of their residence was sufficiently inconsistent with record title that a prudent purchaser would have inquired whether Peters had previously obtained *all* the ownership interests or whether Weisman still retained a 50 per cent interest in Peters' and Neergaard's house.

In determining inconsistency, we take a practical approach. The state of affairs at the Campbell residence would have made a prudent purchaser suspicious that Weisman, divorced and remarried, no longer actually owned any interest in the home occupied by her former husband and his new wife. Circumstances have changed since 1901. No longer are wives and former wives statutorily disabled from managing and controlling their property, *see, e.g., Kirchberg v. Feenstra,* 450 U.S. 455, 457 & n. 1, 101 S.Ct. 1195, 1197 n. 1, 67 L.Ed.2d 428 n. 1 (1981), and certainly they are not ordinarily willing to allow a former husband to enjoy exclusive use of their property by living in it with a second wife. Nor are former husbands particularly anxious these days to have a former wife own half of the home in which they reside with her successor. As we approach the end of the century the nature of financial arrangements between divorced spouses is generally far different than it was when the century began.[11] In any event, the circumstances relating to Peters' home were such as to give rise to a duty to inquire on the part of a prudent purchaser.

A reasonable inquiry into the true ownership of the Campbell residence would have confirmed the suspicions that would have been aroused by a realistic analysis of the visible circumstances at the property. Inquiry would have revealed that Peters, in fact, had full title and that Weisman had no interest to sell. Under California Civil Code section 19 the trustee is charged with that knowledge and, therefore, does not qualify as a BFP able to set aside, under 11 U.S.C. section 544(a)(3), the unrecorded transaction whereby Weisman gave Peters complete ownership of the house in which he, but not she, continued to reside. Accordingly, the district court erred in reversing the bankruptcy court.

### III. Conclusion

The bankruptcy court did not clearly err in finding that, given the discrepancies between Peters' and Neergaard's possession of their

---

11. It was at the turn of the century that a three-judge panel of the California Supreme Court decided *Schumacher v. Truman,* the principal case relied upon by the trustee. See discussion *supra* p. 421.

residence and record title, a prudent purchaser would have inquired of Peters as to whether his former wife continued to own an interest in her former home. Consequently, the judgment of the district court is **REVERSED** and the case **REMANDED** to the bankruptcy court for the entry of judgment in favor of Peters.