**In re VAN NESS ASSOCIATES, LTD., a California limited partnership, Debtor.**

**SWISS BANK CORPORATION, Plaintiff,**

**v.**

**VAN NESS ASSOCIATES, LTD., et al., Defendants.**

**Bankruptcy No. 93–3–3353 TC.**
**Adv. No. 93–3–579 DM.**

United States Bankruptcy Court, N.D. California.

Oct. 18, 1994.

664

Alan M. Koschik, Pettit & Martin, San Francisco, CA, for plaintiff.

Craig Stuppi, Carl R. Goldberg, Bronson, Bronson & McKinnon, San Francisco, CA, for defendant Van Ness Associates, Ltd.

Calvin House, Fulbright & Jaworski, Los Angeles, CA, for defendant Shawmut Bank, N.A.

## MEMORANDUM DECISION

DENNIS MONTALI, Bankruptcy Judge.

## I. INTRODUCTION

Plaintiff Swiss Bank Corporation ("Swiss Bank"), as agent for Mitsubishi Bank Limited, Dresdner Bank AG, Caisse Nationale de Credit Agricole, and Instituto Bancario San Paolo di Torino (collectively, "Banks") filed a complaint seeking a declaration that Banks' lien on a 3/8 inch strip of real property (the "Strip") currently owned by debtor Van Ness Associates ("VNA") is valid and enforceable against and has priority over the interests and liens of each of the other defendants. On April 1, 1994, Banks filed a motion for summary judgment; VNA responded with a cross motion for summary judgment seeking a determination that any lien held by Banks is voidable pursuant to Bankruptcy Code Section 544(a)(3) ("Section 544(a)(3)"). Defendant Shawmut Bank, N.A. ("Shawmut Bank") also filed an opposition to Banks' motion. Following a hearing on the cross motions for summary judgment, the court requested counsel for Banks and VNA to submit supplemental authorities addressing additional issues.

The court has considered the evidence and the arguments of the parties, and, for the reasons set forth below, finds that (1) Banks have a valid lien on the Strip; (2) VNA may not avoid Banks' lien pursuant to Section 544(a)(3); and (3) Banks' lien has priority over the liens and interests of Shawmut Bank and the other defendants. Accordingly, Banks' motion for summary judgment should be granted, and VNA's cross-motion for summary judgment should be denied.

## II. FACTUAL BACKGROUND [1]

On November 26, 1986, VNA obtained a $36 million loan pursuant to a credit agreement (the "Credit Agreement") with Banks.[2] The loan was secured by a properly recorded deed of trust (the "Deed of Trust") on VNA's real property located at 1650 Mission Street in San Francisco (the "Property").[3] The legal description of the Property contained in the Deed of Trust excluded the Strip running through the middle of the Property.[4] This legal description was consistent with VNA's record title at the time of the loan.

VNA obtained judgment in San Francisco County Superior Court quieting title to the

---

1. The following discussion constitutes the court's findings of fact and conclusions of law. Fed. R.Bankr.P. 7052.

2. Swiss Bank states in its papers that the four banks that executed the Credit Agreement were a slightly different group than Banks, upon whose behalf this action was filed. Swiss Bank Corporation International Securities, Inc. executed the Credit Agreement but was later replaced by Instituto Bancario San Paolo di Torino pursuant to a participation agreement. The switch is not material to the issues decided here.

3. The Property is nearly covered by a five-story commercial office building. (Ron Decl. ¶¶ 4–5.)

4. The Property was originally comprised of two separate parcels that will be referred to here as Parcels I and II. The Strip was created by a reservation in a deed dated April 8, 1944, by which the now defunct California Pacific Mortgage & Investment Co. ("California Pacific"), then the record owner of both Parcel I and Parcel II, granted Parcel II to an individual named Genevieve Haley. Thereafter, Parcel II, without the Strip, and Parcel I were transferred separately by Ms. Haley and California Pacific respectively to various entities until they eventually came under common ownership in March, 1949. The parcels, still without the Strip, were then transferred together several times until they were obtained by VNA in 1982. Consequently, from April 1944 until a quiet title judgment in VNA's favor was obtained August 1987, the Strip remained in the name of California Pacific.

Strip (the "Quiet Title Judgment") on August 20, 1987. The Quiet Title Judgment was recorded in the San Francisco recorder's office on that same day. The Deed of Trust contained a legal description of Parcel II which expressly excluded "the northeasterly 3/8 of an inch" thereof; the Quiet Title Judgment decreed that VNA was the sole owner of the fee simple interest described as "the northeasterly 3/8 of an inch of the following described property," followed by the legal description of Parcel II without the earlier excluded Strip. VNA then executed and delivered to Banks an amendment to the Deed of Trust (the "Amendment") which modified the legal description of the Property in the Deed of Trust to include the Strip. Although the Amendment was executed and delivered by VNA on May 25, 1988, it was not executed by Swiss Bank as agent until May 26, 1993, after VNA's bankruptcy, and not recorded until November 17, 1993.[5]

During the period between the date the Amendment was executed by VNA and the date it was finally recorded by Swiss Bank, several liens and interests were recorded and have been represented as liens against the Property. The details regarding these liens and interests are set forth separately below.[6] VNA filed its Chapter 11 bankruptcy petition on July 10, 1992.

Swiss Bank filed its complaint on December 21, 1993. Defendants VNA, Garrett, Shawmut Bank, and the Internal Revenue Service ("IRS") each filed timely answers. No responsive pleadings were filed by the remaining defendants Leary, Shawmut Investor Group, Soaring Eagle, or the EDD. The court consequently entered defaults against these four defendants. After defendant Garrett failed to appear at the first status conference, the court ordered Garrett's answer stricken and a default entered against Garrett as well.

Swiss Bank and the IRS subsequently filed a stipulation for entry of judgment against the IRS, which was entered on March 15, 1994. Swiss Bank now seeks a judgment against the seven remaining defendants, including the five against whom defaults have already been entered.

## III. ISSUES

The cross motions for summary judgment present the court with three main issues:

**A.** **Whether Banks have a valid lien on the Strip;**

**B.** **Whether any lien held by Banks is voidable pursuant to Section 544(a)(3); and**

**C.** **Whether any lien held by Banks is superior to the liens and interests of each of the other defendants.**

## IV. DISCUSSION [7]

### A. *Banks hold a valid lien on the Strip.*

Swiss Bank argues that the Amendment was valid and created a lien on the Strip in favor of Banks even though their agent, Swiss Bank, failed to execute the Amend-

---

**5.** The court granted Swiss Bank relief from the automatic stay to foreclose the Deed of Trust, as amended to include the Strip, subject to the rights of VNA and other third parties holding interests in the Strip.

**6.** (1) On October 12, 1988, defendant Thomas A. Leary ("Leary") recorded an abstract of judgment (the "Leary Judgment") with a maximum amount of $650,000 plus costs and interest against Richard I. Deringer ("Deringer"), individually and as general partner of VNA;
(2) On April 30, 1989, VNA granted defendant Shawmut Bank, a deed of trust against the Property in the amount of $725,777. This deed of trust was recorded on December 11, 1989;
(3) Between March 1990 and April 1991, defendant Employment Development Department ("EDD") recorded a series of tax lien notices against Deringer, as general partner of VNA, and/or Pacific Land Holdings, Inc.;
(4) On January 3, 1991, an assignment of the Leary Judgment to defendant Soaring Eagle Limited Partnership ("Soaring Eagle") was recorded;
(5) On June 16, 1992, defendant M. Garrett ("Garrett") recorded an abstract of judgment in the amount of $817.76, plus costs and interest, against VNA dba Van Ness Plaza and Deringer.

**7.** VNA has not disputed any portion of the facts presented in Swiss Bank's statement of undisputed material facts. Accordingly, the court finds that there is no genuine issue of material fact remaining for trial and the court must determine which party is entitled to judgment as a matter of law. Fed.R.Bankr.P. 7056.

ment prior to the date VNA filed its Chapter 11 petition. VNA argues that because paragraph 3.31 of the Deed of Trust ("Paragraph 3.31") required that any amendment to it be in writing and signed by the parties,[8] the Amendment was not effective until it was executed in May, 1993, after the petition was filed.

The Deed of Trust created a lien on the Property except the Strip. The purpose of the Amendment was to include the Strip. The only question is therefore whether a representative of Swiss Bank was required to sign the Amendment to validate the lien.

 The creation of a lien by a deed of trust is a grant of an interest of real property. Such a grant must comply with the statute of frauds as codified by state law. Miller & Starr, *California Real Estate 2d.* § 1:58 (Bancroft–Whitney 1989); Cal.Civ. Code § 2922. California law requires that such a grant be in writing and signed by the grantor. Cal.Civ.Code § 1091. The grant then becomes effective upon delivery by the grantor. Cal.Civ.Code § 1054. A valid grant of an interest in real property therefore does not require the signature of the grantee to be valid. Consequently, in the absence of the requirements of Paragraph 3.31, Swiss Bank's signature on the document would be unnecessary, and the Amendment would have been valid upon delivery by VNA. Accordingly, this court must decide whether

Paragraph 3.31 should be interpreted so as to delay the effect of an otherwise valid transfer of an interest in real property.

 The apparent intent of the parties, the conceivable purpose of Paragraph 3.31, and other equitable considerations compel the conclusion that the court should not allow VNA to use Paragraph 3.31 to abrogate a lien that it had freely granted to Banks through the Amendment.

 A contract must be interpreted so as to make it operative if that can be done without violating the intentions of the parties. Cal.Civ.Code § 1643.[9] The Credit Agreement specifically required VNA to quiet title to the Strip within one year ("the Quiet Title Requirement").[10] Paragraph 3.3(b) of the Deed of Trust ("Paragraph 3.3(b)") also provided that all property subsequently acquired by VNA which was "required or intended to be subject to the terms" of the Deed of Trust would immediately become subject to the lien created by the Deed of Trust, and that VNA would "execute, acknowledge, and deliver all such further instruments as [Swiss Bank would] reasonably require for accomplishing the purposes of [the] Deed of Trust" or that "may be required by [Swiss Bank] to confirm the lien of [the] Deed of Trust on the Property." [11] There does not appear to be any

---

**8.** Paragraph 3.31 of the Deed of Trust provides that "[no] change, amendment, modification, cancellation, or discharge of this Deed of Trust shall be valid unless in writing and signed by the parties hereto or their respective successors and assigns."

**9.** Although the Amendment is technically not a contract, grants of a lien on real property are to be "interpreted in like manner with contracts in general." Cal.Civil Code § 1066.

**10.** Section 6.11 of the Credit Agreement provides that "[w]ithin one year of the Closing Date, [VNA] shall quiet title in [VNA] of that certain 0.031' strip described as "unknown ownership" on [a specified] survey of the Property...."

**11.** The complete text of Paragraph 3.3(b) is as follows:

All property of every kind acquired by [VNA] after the date hereof which, by the terms hereof, is required or intended to be subjected to the lien of this Deed of Trust shall, immediately

upon the acquisition thereof and without any further conveyance, assignment or transfer, become subject to the lien of this Deed of Trust. Nevertheless, [VNA] shall do all such further acts and execute, acknowledge, and deliver all such further instruments as [Swiss Bank] shall reasonably require for accomplishing the purposes of this Deed of Trust, including security agreements, financing statements and continuation statements with respect to subsequently acquired personal property satisfactory to [Swiss Bank], and other instruments as may be required by Swiss Bank to confirm the lien of this Deed of Trust on the Property. [VNA] shall pay any and all fees for filing such instruments.

Swiss Bank argues that when the language in Paragraph 3.3(b) and the Quiet Title Requirement are read together, the documents evidence an intent to have the Strip become subject to the lien created by the Deed of Trust immediately upon acquisition of the Strip by VNA. Under this reasoning, an equitable lien on the Strip was created in favor of the Banks on August 20, 1987,

logical reason why the parties would incorporate such requirements into the transaction other than that they intended the Strip eventually to become subject to the lien created by the Amendment. Moreover, it is doubtful that VNA would have executed and delivered the Amendment if it had not understood the Deed of Trust to require such action. Thus, a conclusion that the Amendment was ineffective would be contrary to the apparent intent of the parties regarding the overall transaction.

Similarly, such a determination would not further the apparent purpose of the signature requirement. The law does not require idle acts. Cal.Civ.Code § 3532. The purpose of Paragraph 3.31 appears to be to protect either party from being charged with any additional obligations under an amendment to the Deed of Trust without that party's written consent. While the Amendment does impose additional obligations on VNA in the form of the lien on the Strip, it does not impose any corresponding additional obli- gations on Banks. Consequently, a finding that the Amendment was invalid after execution and delivery by VNA does not serve the apparent purpose of Paragraph 3.31. Therefore, there is simply no rational justification for denying Banks what was freely granted to them by VNA when such action would not further any legitimate purpose.

the date VNA obtained title the Strip pursuant to the Quiet Title Judgment. The Amendment would therefore only have served to confirm the prior grant of a lien as provided by Paragraph 3.3(b).

California law does provide that parties may agree to create liens upon property not yet acquired by the debtor and that such liens attach at the time the debtor acquires the property. Cal.Civil Code § 2883. However, the court does not choose to adopt this interpretation of the documents for two main reasons. First, Paragraph 3.3(b) requires that the parties' intent that after-acquired property become subject to the lien of the Deed of Trust appear in the terms of the Deed of Trust itself. While such intent may be inferred from the overall context of the transaction, it is not readily apparent from the terms of the Deed of Trust alone. Second, case law regarding equitable liens imposes the more strict requirement that the parties intent to encumber the after acquired property be explicit. *Schelling v. Thomas*, 96 Cal.App. 682, 274 P. 755, 757 (Cal.App. 1st Dist.1929) ("Every express agreement in writing, whereby the party *clearly indi-*

This conclusion is consistent with that of other courts addressing similar execution requirements. See *Burns v. Peters*, 5 Cal.2d 619, 55 P.2d 1182 (1936) (deed of trust not a nullity where trustee failed to execute the document as required by a provision therein); and *Burkett v. Burkett*, 78 Cal. 310, 20 P. 715 (1889) (husband cannot avoid a valid conveyance to his wife of homestead property on the ground that such conveyance was without the signature and acknowledgement of the wife, even though the signatures of both spouses was required by statute, because the conveyance was not in derogation of the rights of the wife). Therefore, the Amendment was valid and effective on or about May 25, 1988, when it was executed and delivered by VNA.

**B. *VNA may not avoid Banks' lien on the Strip.***

1. **The Strip could not be legally transferred by VNA.**

■■■■■ VNA argues that any lien held by Banks at the time of the bankruptcy case was unperfected, and that VNA may avoid such a lien through the use of the avoiding powers contained in Section 544(a)(3). Section 544(a)(3) provides [12] that a bankruptcy trustee [13] may avoid transfers of real property of the debtor that would be voidable by a

*cates* an intention to make some particular property *therein described* a security for a debt, creates an equitable lien on the property, which is enforceable.") (emphasis added).

12. Section 544(a)(3) reads, in part:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
(1) ...
(2) ...
(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such purchaser exists.

13. VNA, as debtor in possession, has all of the rights and powers of a trustee. 11 U.S.C. § 1107.

bona fide purchaser of real property under state law. *Robertson v. Peters (In re Weisman)*, 5 F.3d 417, 419 (9th Cir.1993). Specifically, the trustee only acquires the voiding powers of a bona fide purchaser that could have obtained its bona fide status and perfected its purchase at the time of the commencement of the case.[14] The trustee may also only avoid those prior unrecorded interests of which the trustee had no constructive notice. *Id.* at 420. Thus, at a minimum, VNA may only invalidate Banks' lien if (1) a purchase of the Strip could have been perfected against VNA at the time its petition was filed; and (2) VNA, as a hypothetical purchaser, could not have had constructive notice of Banks' lien.

■■■■■ A purchase of the Strip could have been perfected against VNA only if the Strip could have been lawfully conveyed to a

bona fide purchaser as of the date VNA filed its petition (the "Filing Date"). The Strip could have been lawfully conveyed to a bona fide purchaser on the Filing Date only if it was a separate parcel of land created in compliance with the California Subdivision Map Act (the "SMA") and local zoning ordinances.[15] Banks argue alternatively (1) the Strip never was a separate, lawfully created parcel of land or at least was not a separate parcel as of the Filing Date; and (2) even if the Strip once was a separate, lawfully created parcel, it merged into Parcel II prior to the Filing Date pursuant to the merger provisions of the SMA.

■■■■■ Since 1971, California case law has provided that, under certain circumstances, two lots created by an unregulated lot split will merge into one parcel (the "Merger Doctrine").[16] The legislature later

**14.** *See supra* note 12 ("The trustee . . . may avoid any transfer of property of the debtor that is voidable by a bona fide purchaser of real property . . . that obtains the status of a bona fide purchaser *and has perfected such transfer* at the time of the commencement of the case. . . .") (emphasis added). The court interprets the italicized language as requiring the hypothetical bona fide purchaser to have perfected the purchase that gave the bona fide purchaser its bona fide status at the time of the transfer. Since the bona fide purchaser could not perfect such a purchase if it could not have lawfully acquired the subject property, the bona fide purchaser could not avoid any transfer of the debtor's property where that property could not have been lawfully acquired at the time of the commencement of the case. Thus, since the bona fide purchaser could not avoid a transfer of such property, the trustee acquires no avoiding powers as to that property either.

The Ninth Circuit Court of Appeals provides some support for this conclusion that the trustee acquires no avoiding powers as to property that could not have been lawfully conveyed at the time of the commencement of the case in *In re Loretto Winery*, 898 F.2d 715 (9th Cir.1990). There, the court had to decide whether the Chapter 7 trustee of the debtor winery could avoid a California statutory producer's lien held by a grape vendor under section 545(2) of the Bankruptcy Code. The provisions of section 545(2) are analogous to those of Section 544(a)(3) in that the trustee possesses the power to avoid statutory liens that are not "perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property at the time of the commencement of the case, whether or not such a

purchaser exists." 11 U.S.C. § 545(2). However, California law provides no means of perfecting a producer's lien because it prohibited sales and actions that would defeat such a lien where the proceeds of such sales or actions were not used to pay off the lien. *Id.* at 722–23. Although the grape vendor's purchase lien was therefore clearly unperfected in the traditional sense, the court concluded that the trustee acquired no avoiding powers over the lien claimants because the lien could not be lawfully defeated by a bona fide purchaser.

**15.** In general California law requires that a parcel of land may be lawfully conveyed only if it is in compliance with applicable provisions of the California Subdivision Map Act, Cal.Govt.Code §§ 66410–66499.37). The major requirement of the SMA is that a map of any subdivision of a parcel be approved by an appropriate local agency before the parcels are divided. Cal.Govt.Code § 66426. Conveyance of a parcel that does not comply with the SMA can result in rescission of the transfer. Cal.Govt.Code § 66499.32. Violation of the SMA is also a criminal offense. Cal. Govt.Code § 66499.31. For an overview of the SMA, see generally Robert E. Merritt, *Metes and Bounds Descriptions: A Red Flag Forewarning Possible Subdivision Map Act Violations*, 13 Real Prop.L.Rep. 117 (1990).

**16.** See *Hill v. City of Manhattan Beach*, 6 Cal.3d 279, 98 Cal.Rptr. 785, 491 P.2d 369 (1971) (holding that two lots created by an unregulated lot split merge into one parcel when, due to changes in zoning regulations, the lots were no longer in compliance with minimum square footage building requirements). The California Attorney General subsequently issued several opinions based

codified these merger provisions into the SMA through California Government Code section 66451.10. Section 66451.10(a) (the "Non-merger Exemption") provides that when two or more contiguous parcels of land come under common ownership, they shall not be deemed merged if they were "created under the provisions of this division, or any other prior law regulating the division of land, or a local ordinance enacted pursuant thereto, or *which were not subject to those provisions at the time of their creation....*" (Emphasis added.) The Banks interpret the italicized language above to provide that because the Strip was not expressly exempt from regulation by the SMA [17] or any other local ordinance [18] when it was created, it does not qualify for the Non-merger Exemption. Banks' thus conclude that because the Strip is not exempted from the SMA merger provisions, it should be deemed merged into Parcel II pursuant thereto.[19]

The recent decision by the California Supreme Court in *Morehart v. County of Santa Barbara,* 7 Cal.4th 725, 29 Cal.Rptr.2d 804, 872 P.2d 143 (1994), compels this court to reject Banks' interpretation of the Non-merger Exemption. There, the court considered whether the Non-merger Exemption was applicable to parcels created prior to the enactment of California's first SMA statute in 1893. The court specifically rejected the argument that the phrase "not subject to those provisions at the time of their creation" meant "exempted from the provisions that were in existence at the time of the parcels' creation." *Id.* at 761, 29 Cal.Rptr.2d 804, 872 P.2d 143. The court further concluded that "[i]f, when the parcels were created, no land-division provisions were in existence, the parcels necessarily 'were not subject to those

provisions at the time of their creation'". *Id.* Thus, since no land-division provisions regulating subdivisions of four or fewer parcels were in existence when the Strip was created, the Strip does qualify for the Non-merger Exemption. Accordingly, Banks' argument that the Strip merged into Parcel II pursuant to the SMA merger provisions must be rejected.

██ A precise determination that the Strip was never a separate, lawfully created parcel between the initial April 8, 1944, reservation and the Filing Date would require a lengthy analysis of numerous current and former provisions the SMA and various local zoning ordinances. However, the court is not required to make such a precise determination as it must only decide whether the Strip was a separate, lawfully created parcel as of the Filing Date.

It is uncontroverted that, regardless of the legal status of the Strip between 1944 and 1987, VNA acquired title to the Strip through the Quiet Title Judgment on August 20, 1987, nearly five years prior to the Filing Date. The pertinent question here is thus whether the effect of the Quiet Title Judgment was to quiet title in VNA of a separate parcel of property or of a portion of the Property it already owned. This question is easily answered by referring to the legal description of the Strip that is appended to the Quiet Title Judgment. As stated earlier, the Superior Court described the Strip as a portion of Parcel II. Significantly, VNA appears to recognize this fact in that it explicitly concedes that the Strip was not a separate, lawfully created parcel as of the Filing Date.[20] Therefore, the court finds that the Strip was not an independent, lawfully creat-

---

on *Hill* that extended the Merger Doctrine to the SMA and local subdivision ordinances. *See* 56 Ops.Cal.Atty.Gen. 509 (1973); 59 Ops.Cal.Atty. Gen 239 (1976); and 64 Ops.Cal.Atty.Gen. 549 (1981).

**17.** The Strip was created by a reservation in a conveyance of Parcel II in 1944. At that time, the SMA only regulated subdivisions regarding five or more parcels. Cal.Bus & Prof.Code §§ 11507, 11535 (1951 ed.).

**18.** Subdivisions of four or fewer parcels do not appear to have been regulated by local ordinance

until the San Francisco Subdivision Code was adopted on April 25, 1975. (Koschik Decl. ¶¶ 4–7.)

**19.** This conclusion does not necessarily follow. Parcels that are ineligible for the Non-merger Exemption may or may not be subsequently deemed merged depending on the applicability of other merger provisions of the SMA. *See generally,* Cal.Govt.Code §§ 66451.10–66451.21.

**20.** Supplemental Memorandum of Points and Authorities In Support of Plaintiff's Motion For Summary Judgment, p. 3, 11. 1–2.

ed parcel as of the Filing Date. Consequently, because the Strip could not have been lawfully conveyed as of the Filing Date, there could be no bona fide purchaser of the Strip. Accordingly, VNA acquired no voiding powers over the Strip under Section 544(a)(3) and may not avoid Banks' lien.

2. VNA, is a hypothetical bona fide purchaser, would have constructive notice of Banks' lien on the Strip.

 VNA also cannot avoid Banks' lien on the Strip because it would have constructive notice of the lien. Section 544(a)(3) only gives the bankruptcy trustee powers to avoid transfers of real property of the debtor that would be voidable under state law by a bona fide purchaser of the property from the debtor. *Weisman,* 5 F.3d at 420. *Placer Savings & Loan Ass'n v. Walsh (In re Marino)* 813 F.2d 1562, 1565 (9th Cir.1987). California law thus determines whether VNA's status as a bona fide purchaser will defeat the Banks' unrecorded lien on the Strip. Under California law, every conveyance of real property must be recorded to be valid against a subsequent purchaser of the property, but an unrecorded conveyance is still valid as between the parties thereto and to those who have notice of it. Cal.Civil Code §§ 1214, 1217. Although Section 544(a)(3) renders irrelevant a trustee's actual knowledge of prior liens or interests in the debtor's property, the Ninth Circuit has held that constructive or inquiry notice obtained by the trustee in accordance with California Civil Code section 19 can defeat a trustee's ability to avoid a transfer under section 544(a)(3). *Weisman,* 5 F.3d at 420. Actual knowledge of a Chapter 11 debtor in possession is equally irrelevant. *Wonder–Bowl Properties v. Kim (In re Kim),* 161 B.R. 831 (9th Cir. BAP 1993).

 California Civil Code section 19 ("Section 19") provides that "[e]very person who has actual notice of circumstances sufficient to put a prudent [person] upon inquiry as to a particular fact, has constructive notice of that fact in all cases in which, by prosecuting such inquiry, he might have learned such fact." The question here is thus whether a prudent purchaser, based on the knowledge available to him on the Filing Date, would have made an inquiry into the possibility that Banks had an unrecorded lien on the Strip. If, under the circumstances, a prudent purchaser would have made such an inquiry, then Section 19 charges the trustee or debtor in possession with knowledge of the unrecorded lien. This constructive knowledge would prevent VNA from exercising its strong arm powers to defeat Banks' unrecorded lien on the Strip.[21]

The foregoing case law in the Ninth Circuit provides that where the physical condition or possession of the property indicates that there may be an unrecorded interest in the property, a prospective purchaser must inquire as to whether any unrecorded interests do in fact exist. *See In re Probasco,* 839 F.2d at 1354; *Weisman,* 5 F.3d at 422. The reasoning behind this doctrine is that whenever the physical condition or nature of possession of the property is unusual or different from that which would be expected based on record title, a prudent purchaser would not ignore such evidence but would inquire into the reason for the unusual circumstances. For example, in *Probasco,* the trustee was charged with constructive notice of the debtor's unrecorded interest in one of three contiguous lots because there was a perimeter fence surrounding the three lots, there was no fence between the parcels, and there were roads traversing the entire property. The *Probasco* court concluded that

---

**21.** The only authorities which bear on the issue are appellate decisions in bankruptcy cases which apply California law. *Weisman* and *In re Probasco,* 839 F.2d 1352 (9th Cir.1988) involve effective outright conveyances of real property which were held valid against bona fide purchasers, and thus against trustees. *Wonder–Bowl Properties, supra,* involved an involuntary judgment lien about which a bona fide purchaser would only be charged with knowledge of a defective abstract of judgment (which by statute

could not prevail against a purchaser). The case at bench appears to be one of first impression, namely a consensual lien, improperly perfected of record as of the commencement of bankruptcy. There appear to be no policy reasons why the result should be any different from the conveyance cases where a bona fide purchaser (and thus the debtor in possession or a trustee) would have constructive knowledge of the unrecorded lien.

because it would be unusual under these physical conditions for the debtor only to have a one-half interest in two of the three lots, a prudent purchaser would have inquired as to whether the debtor had an unrecorded interest in the third parcel. Similarly, the *Weisman* court concluded that a trustee seeking to avoid debtor's unrecorded transfer of her interest in her former marital residence to her former husband had duty to inquire whether the debtor retained any interest in the property where debtor's former husband occupied the residence with his second wife. The court reasoned that because it was uncommon for a husband and his second wife to live in a house still partially owned by the husband's first wife, a prudent purchaser would have inquired as to whether the first wife still claimed an interest in the property. Based on this analysis, the court must decide whether the physical condition of the Strip was sufficiently unusual such that a prudent purchaser would have inquired whether Banks had an unrecorded lien on the Strip, notwithstanding the fact that a lien is obviously not an interest readily detectible by physical signs such as fence locations or persons occupying a residence.

■ A prudent purchaser is charged with knowledge that a reasonable inspection of the Property would have revealed. *Weisman*, 5 F.3d at 420. A prudent purchaser conducting an examination of the Property could have determined (1) that the Strip was only 3/8 inch wide [22] and less than five square feet in total area; (2) that the Strip was located in the center of the Property; and (3) that the Strip was located directly underneath an office building that covered the entire Property. Furthermore, since Parcel I, Parcel II, and the Strip are all included in one assessor's parcel,[23] a prudent purchaser would have constructive notice of the contents of all recorded documents, as well as documents referred to in those recorded documents,[24] including: (1) that VNA did not have title to

the Strip when it granted Banks a lien on Parcel I and Parcel II; (2) that the Credit Agreement expressly required VNA to acquire title to the Strip; (3) that VNA subsequently acquired title to the Strip; and (4) that Paragraph 3.3(b) of the Deed of Trust provided that all property subsequently acquired by VNA which was intended to be subject to the terms of the Deed of Trust would immediately become subject to the lien created by the Deed of Trust.

■ It is inconceivable that a prudent purchaser on notice of the physical condition of the Property and the unique size and location of the Strip, as well as the unusual chronology regarding the Strip and the transaction between Banks and VNA would not inquire into whether Banks had an unrecorded lien on the Strip. A "prudent purchaser" is shrewd in the management of practical affairs and exhibits conduct marked by wisdom, judiciousness, and circumspection. *Probasco*, 839 F.2d at 1356. A wise or judicious person would recognize that not only do parcels of land of such dimensions rarely exist, it is even less common for such parcels to lie directly under a commercial office building and not be secured by the deed of trust perfected as to both the building and the adjoining parcels. Similarly, a person of circumspection would surely find it necessary to inquire as to whether the Strip did actually become subject to the lien created by the Deed of Trust pursuant to Section 3.3(b) after VNA quieted title. Moreover, since it would be highly unusual for an institutional lender to fail to perfect its lien on after-acquired property that constitutes a portion of the parcel previously secured by its deed of trust, a prudent purchaser would almost certainly inquire as to whether such a lender had an unrecorded lien on that after-acquired property. The court therefore finds that a prudent purchaser on notice of the physical condition of the Property, as well as the after-acquired property provisions con-

---

**22.** To illustrate the point, the spacing between the lines of this opinion is slightly more than ⅜ of an inch.

**23.** Declaration of Laurie Rosa Re Motion For Summary Judgment, Exhibit A.

**24.** *American Medical International, Inc. v. Feller,* 59 Cal.App.3d 1008, 1020, 131 Cal.Rptr. 270, 277–78 (1976); *Pacific Trust Company TTEE v. Fidelity Federal Savings & Loan Association,* 184 Cal.App.3d 817, 825, 229 Cal.Rptr. 269, 275 (1986).

tained in the documents affecting record title to the Property, could reasonably be expected to inquire as to whether Banks had an unrecorded lien on the Strip. Consequently, since such an inquiry would have put a prospective purchaser on notice of Banks' unrecorded lien on the Strip, VNA as debtor in possession may not avoid Banks' lien pursuant to Section 544(a)(3).

### C. *Banks' lien is superior to that of Shawmut Bank and all other defendants.*

■ Having concluded that Banks have a valid lien on the Strip, and that the lien is not voidable by VNA under Section 544(a)(3), the court must determine the position of Banks' lien relative to the various other liens and interests recorded against the Strip by the defendants.[25] However, the court need only specifically determine the status of Banks' lien with regard to the lien recorded by Shawmut Bank since judgment has already been entered against defendant IRS and defaults have been entered against all of the remaining defendants.

Banks obtained a lien on the Strip when VNA executed and delivered the Amendment on May 25, 1988. The Amendment was not recorded until November 17, 1993, nearly four years after Shawmut Bank recorded its deed of trust (the "Shawmut Deed of Trust") on December 11, 1989. Thus, the Shawmut Deed of Trust would prevail over Banks' lien and any other subsequently recorded interest only if Shawmut Bank had no actual or constructive notice of those interests on the December recording date. Cal.Civ.Code § 1217. However, because the court finds that the physical condition and legal status of the Strip provided constructive notice of Banks' lien from the date that it was obtained, Shawmut Bank was charged with such notice when it obtained the Shawmut Deed of Trust. Consequently, Banks' lien is superior to the Shawmut Deed of Trust.

## V. CONCLUSION

In summary, the court finds that (1) Banks do have a valid lien on the Strip; (2) VNA

may not avoid Banks' lien pursuant to Section 544(a)(3); and (3) Banks' lien has priority over the lien recorded by defendant Shawmut Bank and the interests of all other defendants. Accordingly, Banks' motion for summary judgment is granted, and VNA's cross-motion for summary judgment is denied.

Counsel for Banks should serve a form of judgment consistent with this decision.

---

25. VNA appears as a defendant as the current owner of the Property, including the Strip, and as the debtor in the underlying bankruptcy case.

VNA asserts no claim to the Strip other than that acquired by the Quiet Title Judgment.